JAMES P. FLETCHER

*v.*

WALTER C. TUTTLE, County Clerk, etc.

and

W. C. BLAIR

*v.*

WILLIAM H. HINRICHSEN, Secretary of State.

*Filed at Springfield, June 15, 1894.*

1. CHANCERY—*jurisdiction—political rights.* In this State, courts of equity have no authority or jurisdiction to interpose for the protection of rights which are merely political, and where no civil or property rights are involved. The assertion and protection of political rights by judicial power, as apportioned in this State between courts of law and courts of chancery, are not a proper matter of chancery jurisdiction.

2. A court of equity has no jurisdiction of a bill filed by a voter and candidate for a particular elective office which seeks the protection and enforcement of his right to cast his own ballot in a legal and effective manner, and also his right to be such candidate, to have the election called and held under the provisions of a valid law, and to have his name printed upon the ballot to be used at such election, so that he may be voted for in a legal manner. Such rights are purely political.

3. The extraordinary jurisdiction of courts of chancery can not be invoked to protect the right of a citizen to vote or to be voted for at an election, or his right to be a candidate for or to be elected to any office. Nor can it be invoked for the purpose of restraining the holding of an election, or of directing or controlling the mode in which, or of determining the rules of law in pursuance of which an election shall be held. These matters involve in themselves no property rights, but pertain solely to the political administration of government.

4. If a public officer charged with political administration has disobeyed, or threatened to disobey, the mandate of the law, whether in respect to calling or conducting an election, or otherwise, the party injured, or threatened with injury, in his political rights, is not without remedy. But his remedy must be sought in a court of law, and not in a court of chancery.

5. REMEDY—*mandamus and injunction.* Where the established distinctions between equity and common law jurisdiction are observed,

injunction and *mandamus* are not correlative remedies in the sense of being applicable to the same subject matter, the choice of the writ to be resorted to in a particular case to depend upon whether there is an excess of action to be restrained or a defect to be supplied.

The first case, an appeal from the Circuit Court of Vermilion County, the Hon. FERDINAND BOOKWALTER, Judge, presiding; and the latter case, an appeal from the Circuit Court of Sangamon County, the Hon. JAMES A. CREIGHTON, Judge, presiding.

Mr. GEORGE HUNT, Mr. WM. J. CALHOUN and Mr. E. S. SMITH, for the appellant, Fletcher:

Whether the legislature has transcended its power and passed an act in conflict with the Constitution, is essentially a question of law, and must necessarily be passed on by the court. *Bradley* v. *Comrs.*, 2 Humph. 428; *In re Ruan St.*, 132 Pa. St. 257; Brown on Jurisdiction, 41.

That a court may not coerce or restrain the legislative or executive branches of government in their respective departments, but may pass upon and determine the validity and effect of their acts when done, see: 2 Brice, 430; Cooley on Const. Lim. 193; *Houston* v. *Moore*, 5 Wheat. 1; *State* v. *Newark*, 40 N. J. 71.

One of the principal purposes of equity jurisdiction is the protection of civil rights. 1 High on Inj., sec. 20.

The court has jurisdiction to determine the validity of an apportionment act. *State* v. *Cunningham*, 81 Wis. 440; *State* v. *Cunningham*, 83 id. 90; *People, etc.*, v. *Rice*, 135 N. Y. 473; *People, etc.*, v. *Broom*, 138 id. 95; *Board of Supervisors* v. *Secretary of State*, 92 Mich. 638; *State* v. *Wrightson*, 22 L. R. A. 548; *Giddings* v. *Blacker*, 93 Mich. 1; *Parker* v. *State*, 133 Ind. 178; *Prouty* v. *Stover*, 11 Kan. 235; *State* v. *Francis*, 26 id. 724; *People* v. *Canaday*, 73 N. C. 198; *State* v. *Dudley*, 1 Ohio St. 437; *State* v. *Van Duyn*, 39 N. W. (Neb.) 612; *Warner* v. *Mayor*, 2 Gray, 84; *Kinney* v. *City of Syra-*

*cuse,* 30 Barb. 349; *People* v. *Holihan,* 29 Mich. 116; *People* v. *Bradley,* 36 id. 447; Opinions of Judges, 6 Cush. 575; *Boyd* v. *Nebraska,* 143 U. S. 135.

The court considered the constitutionality of a law providing for the election of presidential electors. *McPherson* v. *Blacker,* 146 U. S. 1.

And the validity of a rule of the House of Representatives. *United States* v. *Ballin,* 144 U. S. 1.

*Injunction by private individual.*—The courts have authority to interfere by injunction where officers are proceeding without authority, under a claim of right to do any act to the injury of the rights of others. Spelling on Ex. Relief, 435; *Hartwell* v. *Armstrong,* 19 Barb. 166; *Giddings* v. *Blacker,* 93 Mich. 1; *People* v. *Collins,* 19 Wend. 56; *Shaw* v. *Hill,* 67 Ill. 455; *Dickey* v. *Reed,* 78 Ill. 269; *Springfield* v. *Edwards,* 84 id. 626.

The duty of the county clerk is ministerial. 1 Spelling, 591; *State* v. *Cunningham,* 81 Wis. 440; *People, etc.,* v. *Rice,* 129 N. Y. 449.

Equity has long assumed jurisdiction to protect the rights of a franchise by injunction. 2 High, sec. 897.

Mr. H. G. JONES, for the appellant, Blair.

Mr. T. A. MORAN, for the appellees, Tuttle and Hinrichsen:

The rights alleged and sought to be protected by this action are purely political, and are, therefore, not cognizable in a court of equity. Anderson's Law Dictionary, 905; *State of Georgia* v. *Stanton,* 6 Wall. 50; *Sheridan* v. *Colvin,* 78 Ill. 247; *Dickey* v. *Reed,* 78 id. 269; *Sparhawk* v. *U. P. Ry. Co.,* 54 Pa. St. 401; *In re Sawyer,* 124 U. S. 213.

The allegation that complainant is a tax-payer adds no equity to the bill. *Doolittle* v. *Supervisors,* 18 N. Y. 155; *Roosevelt* v. *Draper,* 23 id. 318; *Miller* v. *Grundy,* 13 Mich. 540, 551; *Grant* v. *Cook,* 7 Dist. of Columbia, 203;

*Dows* v. *Chicago*, 11 Wall. 108; *Chicago* v. *Union Bldg. Assn.*, 102 Ill. 379; *State of Georgia* v. *Stanton, supra,* opinion, 77.

The rule that one who invokes the aid of a court of equity must present a case of equitable cognizance, applies with all its force, even though the State be the complainant. *World's Columbian Exposition Co.* v. *United States*, 6 U. S. C. C. of App. 58, opinion, page 79.  *People* v. *Canal Board*, 55 N. Y. 390.

Where it is sought to restrain the enforcement of a law alleged to be unconstitutional, on the ground that the enforcement of such law will entail a waste or misapplication of public funds, the officer charged with the custody and disbursement of such funds must be made a defendant. *People* v. *Canal Board, supra.*

The rights claimed for complainant, and the duties charged upon defendant, are strictly legal, and even though a court of law might refuse to interfere by *mandamus* until the defendant is by law required to act, such refusal on the part of a court of law does not give jurisdiction to a court of equity.

Equity will not control public officers, except where such officers have the duty of levying a tax or paying out a fund raised by taxation, or are acting in a trustee capacity, as the officers of a municipality, and such officers are proceeding without authority and in excess of their powers.  *City of Springfield* v. *Edwards*, 84 Ill. 626, and the cases upon which that opinion is based illustrate the above rule.

The Apportionment acts of 1872 and 1882 were subject to every objection which is urged against the present act.  The rule of contemporaneous construction should, therefore, be applied.  *People ex rel. Wright*, 6 Colo. 92, opinion, page 97.

Mr. MAURICE T. MOLONEY, Attorney General, Mr. T. J. SCOFIELD and Mr. M. L. NEWELL, Assistant Attorney Generals, also for appellees, Hinrichsen and Tuttle.

Mr. JAMES M. GRAHAM, State's Attorney for Sangamon county, for the appellee, Hinrichsen.

Mr. S. G. WILSON, State's Attorney for Vermilion county, for the appellee, Tuttle.

Opinion PER CURIAM:

The first of these cases was a bill in chancery, exhibited by James P. Fletcher in the Circuit Court of Vermilion county, praying that an act of the General Assembly, entitled, "An act to apportion the State of Illinois into senatorial districts, and to repeal certain acts therein named," approved June 15, 1893, be declared unconstitutional and void, and that a writ of injunction issue to Walter C. Tuttle, county clerk of Vermilion county, restraining him from issuing, or causing to be posted, notices of election, calling an election for members of the House of Representatives for the eighteenth senatorial district; that the injunction be made perpetual, and also a general prayer for relief.   Tuttle, the county clerk, was the only party named as defendant.

The complainant, by his bill, professed to prosecute his action for himself, as well as for all the people of the State of Illinois.   The averments of his bill are, in substance, that he is, and for more than thirty-nine years has been, a citizen of the county of Vermilion, and is a tax-payer and legal voter in that county; that under the Constitution of the State he is entitled to equal representation in the General Assembly of the State with each and every other citizen thereof, so far as such equality of representation can be secured by an apportionment of the senatorial districts of the State, for the election of senators and members of the House of Representatives in the General Assembly, among the several counties in the State; that, by reason of the matters thereinafter recited, the petitioner's right of equal or proportionate representation in the General Assembly of the State, as well as the like rights of

every other citizen of the State, as provided by the Constitution, has been infringed, violated, and in a large part destroyed, unless through the intervention of the court, as a court of equity, the wrongs complained of shall be prevented.

The bill then alleges that the population of the State, as ascertained by the Federal Census of 1890, was 3,826,351, and an exhibit is appended to the bill of the census bulletin, showing the population of the State by counties, and of the city of Chicago by wards, according to the census of 1890; that for the purpose of apportioning the State into senatorial districts, it became and was the duty of the General Assembly to divide the population of the State, as ascertained by the Federal Census, by the number fifty-one, the quotient thereby produced to be the ratio of representation in the State; that it was then and there the duty of the General Assembly to divide the State into fifty-one senatorial districts, such districts to be formed of contiguous and compact territory, bounded by county lines, such districts to contain, as nearly as practicable, an equal number of inhabitants; that when any county contained a population exceeding two full ratios, it was entitled to be divided into senatorial districts, equal in number to the number of full senatorial ratios of inhabitants contained in the county, as shown by the census; that the senatorial ratio thus formed was 75,026; that the population of the county of Cook was 1,191,922; that the General Assembly, in and by the above mentioned act, gave and apportioned to the county of Cook fifteen senatorial districts, and to the residue of the State thirty-six.

The bill then specifies and points out a large number of the senatorial districts created by the act, both in the county of Cook and elsewhere in the State, which, as it alleges, are not formed of contiguous and compact territory, as required by the Constitution, among them being the eighteenth senatorial district, composed of the counties

of Vermilion and Ford.   It also alleges that the act did not apportion the State into senatorial districts containing, as nearly as practicable, an equal number of inhabitants, but, on the contrary, that many of the districts contain numbers of inhabitants far in excess of the senatorial ratio, and greatly and unnecessarily unequal, when compared with other districts created by the act, and that many of the districts contain numbers of inhabitants greatly below the senatorial ratio, and grossly and unnecessarily unequal, when compared with other districts, and a large number of districts are specified and pointed out, in which it is alleged such gross and unnecessary inequality of population exists.

It is, therefore, alleged, that by reason of the unnecessary and gross inequalities of population among the several districts, and also by reason of the failure to form the several districts of contiguous and compact territory, the Apportionment act of 1893 is unconstitutional and void.

The complainant further alleges that he is a candidate for election as a member of the House of Representatives, which representatives are to be chosen at a general election, to be held on the Tuesday next after the first Monday in November, 1894; that he has already been chosen for such candidacy by the voters of his party in Vermilion county, at the primaries already held in that county; that as such candidate, he has a special personal interest in the question at issue in this case, and is entitled to prosecute this suit, to the end that he may be voted for in the district, and throughout the district, of which Vermilion county legally forms a part, and that the legal voters of all the district may have an opportunity to vote for him, and if chosen by a plurality of the votes cast at such election, that he may be duly declared elected as a member of the House of Representatives for such district; that the entire people of the State are interested in the question, to the end that the next General Assembly of the State to be chosen may be chosen from districts legally formed, and that its acts may

not be questioned, by reason of the invalidity of the act of apportionment, and that the people may enjoy the right of representation, as provided by the Constitution.

The petitioner further alleges, that under the present system of holding elections, as provided for by the laws of this State, the holding of an election throughout the county of Vermilion necessitates a large expenditure of public moneys, to be paid out of the treasury of the county; that as the Apportionment act above referred to is invalid, it will entail upon the people and tax-payers of the county a large and unnecessary burden in holding elections for members of the General Assembly themselves, and that the amount of public funds thus unnecessarily paid out of the county treasury will exceed $50, and that the total cost of holding the election in the county will exceed the sum of $1,000.

It is further alleged, that Walter C. Tuttle is the county clerk of Vermilion county, and it is made his duty by law, at least thirty days prior to any general election, to make out and deliver to the supervisors of his county three notices for each election precinct or district in their respective townships, Vermilion county being under township organization, which notices are required to specify and give the title of the several offices to be filled at such election, and which notices the supervisors are required to post up in three of the most public places in each election precinct in their respective townships, and such election will be held in pursuance thereof, as provided by law; that by the law of the State, the county clerk will have charge of printing the ballots for the general election, and it is made his duty to furnish such ballots to the judges of election, and no ballots other than those thus furnished can be used at the election; that, notwithstanding the matters above set forth, the county clerk threatens and declares his intention to issue the notice of election in his county, for the election of three members of the House of Representatives for the eighteenth senatorial district, and to have the ballots for

the election printed accordingly, so far as the same pertains to the representatives in the General Assembly, by means whereof, and by reason of the premises, the legal voters of Vermilion county will be induced to and will cast their votes for members of the General Assembly for a district of which Vermilion county does not legally form a part, and no votes can be cast at such election for members of the General Assembly for the district of which the county does legally form a part, by means whereof, the election of members of the General Assembly will be invalid and of no effect; that unless restrained by the order of the court from issuing or causing to be posted notices of election as above set forth, the county clerk will issue such notices and cause them to be posted, and petitioner will be greatly damaged, and will be deprived of his constitutional right of becoming a candidate for member of the House of Representatives in the district of which he is a resident, and of being voted for by the legal voters of that district, and also of the right of voting for candidates for the General Assembly for that district; that by reason of the matters above set forth, the people of the State will be deprived of the right of equal and proportionate representation, as provided and recognized by the Constitution of the State.

It is further alleged, that if the Apportionment act of 1893 is invalid, as the complainant is advised and believes, the legal voters of Vermilion county are entitled to vote for and elect a member of the State Senate in the next General Assembly; that the county clerk threatens to and declares it to be his intention to omit from the election notices any call or notice for the election of a member of the State Senate, and to omit from the ballots, which he will cause to be printed for the election in the county, the name of any candidate for the office of senator, so that the legal voters of the county, including the complainant, will

be deprived of the constitutional right of voting for a candidate for State senator at the November election.

It is also alleged, that the General Assembly passed another Apportionment act, which was approved May 16, 1893, which act was in all respects identical with the act before referred to, except that it omitted from the seventh senatorial district the town of Riverside, and which act, the act above referred to, and approved June 15, 1893, purports to have repealed; but it is alleged that the Act of May 16, 1893, is subject to all the objections above set forth in relation to the Act of June 15, 1893, and is, for the same reasons, unconstitutional and void.

The prayer of the bill is, that upon the hearing of the cause both acts be declared unconstitutional and void, and held to be of no effect, and that a writ of injunction issue to Walter C. Tuttle, county clerk of Vermilion county, restraining him from issuing or causing to be posted notices of election, calling an election for members of the House of Representatives for the eighteenth senatorial district, and that such injunction be made perpetual, and that the court grant to the petitioner, and to the people, all such other and further relief as the case demands.

The defendant answered, admitting the allegations of the bill, except that he denied that the complainant's rights were infringed by the matters thus alleged; that the senatorial districts created by the act in question are not compact and contiguous, and that the act is unconstitutional and void, and also excepting that the defendant says that he can not answer whether the districts are as nearly equal as practicable, and whether the population of some of the districts is unnecessarily greater or less than the given ratio.

A replication was filed, and a hearing was had upon the bill, the admissions made by the answer, and the replication, and at such hearing a decree was entered dismissing the bill at complainant's cost for want of equity.

In the other case, of which the title is given above, W. C. Blair filed his bill in chancery, in the Circuit Court of Sangamon county, against William H. Hinrichsen, the Secretary of State, alleging that the complainant is a resident of the county of Jefferson, and a legal voter in that county, and qualified to hold the office of member of the General Assembly, and is a candidate of his party for that office, in and for the forty-seventh senatorial district, as formed by the Apportionment act, approved March 1, 1872, consisting of the counties of Jefferson, Hamilton and White. His bill attacks the Apportionment act of 1893 upon substantially the same grounds alleged in the bill of James P. Fletcher, and also attacks the Apportionment act of May 6, 1882, dividing the State into senatorial districts, on similar grounds, and prays to have both the Acts of 1893 and 1882 declared unconstitutional and void.

The bill alleges, that the Secretary of State declares that it is his intention to certify the names of candidates who are nominated in the various ways now provided by law, as candidates for the General Assembly, from the districts as fixed by the Apportionment act of 1893, if that act is constitutional, but that if it is held to be unconstitutional, he will then certify the names of candidates nominated for the senatorial districts as fixed by the Act of 1882, and that he will so act, unless restrained by the court from so doing, and the complainant will be deprived of his right to have his name printed upon the tickets and voted for at the next general election of members of the General Assembly; that if the Secretary of State is not enjoined from certifying the names of such candidates, a large amount of money will be expended in and about printing the tickets containing the names of the candidates from districts formed by unconstitutional and void laws; that the public money used in printing such tickets will be wholly wasted, and that the complainant is a citizen and tax-payer of the State.

The bill prays that both of the Apportionment laws of 1893, and the Apportionment act of 1882, be each and all declared unconstitutional and void, and that of 1872 be declared in full force, and that the Secretary of State be enjoined from certifying the name of any candidate who may be nominated for election to the next General Assembly from districts formed under either of the Acts of 1893, or under the Act of 1882, and that at the hearing the injunction be made perpetual, and also a general prayer for relief.

A general demurrer to this bill was sustained by the court, and the complainant electing to abide by his bill, a decree was entered dismissing the bill, at the complainant's costs, for want of equity, and the complainant has appealed to this court. The two cases have been consolidated in this court for the purposes of argument, and as they involve substantially the same legal propositions, they will be considered together.

From the foregoing statement of these two bills it seems to be perfectly plain that the entire scope and object of both is the assertion and protection of political, as contradistinguished from civil, personal or property rights. In both the complainant is a legal voter, and a candidate for a particular elective office, and by his bill he is seeking the protection and enforcement of his right to cast his own ballot in a legal and effective manner, and also his right to be such candidate, to have the election called and held under the provisions of a valid law, and to have his name printed upon the ballots to be used at such election, so that he may be voted for in a legal manner. The rights thus asserted are all purely political. Nor, so far as this question is concerned, is the matter aided in the least by the attempt made by the complainant in each bill to litigate on behalf of other voters, or of the people of the State generally. The claims thus attempted to be set up are all of the same nature. and are none the less political.

As defined by Anderson, a civil right is, "a right accorded to every member of a distinct community or nation," while a political right is a "right exercisable in the administration of government." Anderson's Law Dict. 905. Says Bouvier: "Political rights consist in the power to participate, directly or indirectly, in the establishment or management of the government. These political rights are fixed by the Constitution. Every citizen has the right of voting for public officers, and of being elected; these are the political rights which the humblest citizen possesses. Civil rights are those which have no relation to the establishment, support or management of the government. They consist in the power of acquiring and enjoying property, or exercising the paternal and marital powers, and the like. It will be observed that every one, unless deprived of them by sentence of civil death, is in the enjoyment of his civil rights,—which is not the case with political rights; for an alien, for example, has no political, although in full enjoyment of his civil rights." 2 Bouv. Law Dict. 597.

The question then is, whether the assertion and protection of political rights, as judicial power is apportioned in this State between courts of law and courts of chancery, are a proper matter of chancery jurisdiction. We would not be understood as holding that political rights are not a matter of judicial solicitude and protection, and that the appropriate judicial tribunal will not, in proper cases, give them prompt and efficient protection, but we think they do not come within the proper cognizance of courts of equity. In *Sheridan* v. *Colvin*, 78 Ill. 237, this court adopting, in substance, the language of Kerr on Injunctions, said: "It is elementary law, that the subject of the jurisdiction of the court of chancery is civil property. The court is conversant only with questions of property and the maintenance of civil rights. Injury to property, whether actual or prospective, is the foundation on which the jurisdiction rests. The court has no jurisdiction in matters merely criminal or

merely immoral, which do not affect any right of property. Nor do matters of a political character come within the jurisdiction of the court of chancery. Nor has the court of chancery jurisdiction to interfere with the public duties of any department of the government, except under special circumstances, and where necessary for the protection of rights of property.''

In that case, the police commissioners of the city of Chicago filed their bill in chancery against the mayor, the members of the common council, and certain other officers of the city, to restrain the enforcement of a city ordinance reorganizing the police force of the city and depriving the complainants of their functions as police commissioners, it being claimed that the common council had no power to pass the ordinance, and that it was consequently void. It was held that the rights which were thus sought to be protected and enforced were purely political, and that a court of chancery, therefore, had no jurisdiction to interfere with the passage or enforcement of the ordinance.

In *Dickey* v. *Reed*, 78 Ill. 261, a bill in chancery was filed by the state's attorney of Cook county and five tax-payers of the city of Chicago, to restrain the members of the common council of the city and the city clerk from canvassing the returns of the election held in the city April 23, 1875, upon the question whether the city would become incorporated under the General Incorporation act. It was claimed that the election, for certain reasons, was void, and also that gross frauds had been perpetrated at the election, by depositing a large number of ballots in the ballot-boxes which had not been cast by the voters, and that a large number of illegal and fraudulent votes in favor of organization had been cast, and that various other irregularities, having the effect of invalidating the election, had intervened. A preliminary injunction having been awarded, it was disregarded by the city officers, who proceeded, notwithstanding, to canvass the vote and declare

the result.    Various of the city officers and their advisers
were attached and fined for contempt, and on appeal to
this court from the judgment for contempt, it was held
that the matter presented by the bill was a matter over
which a court of chancery had no jurisdiction, and that
the injunction was void, so that its violation was not an
act which subjected the violators to proceedings for con-
tempt.

In *Harris* v. *Schryock*, 82 Ill. 119, it was held that the
power to hold an election is political and not judicial, and
that a court of equity has no jurisdiction to restrain officers
from the exercise of such powers.    And it was said that
this was in accordance with repeated decisions of this
court, and in support of that statement, *People* v. *City of
Galesburg*, 48 Ill. 485; *Walton* v. *Develing*, 61 id. 201;
*Darst* v. *The People*, 62 id. 306, and *Dickey* v. *Reed*, *supra*,
are cited.    So, in *Delahanty* v. *Warner*, 75 Ill 185, it was
held that a court of equity has no jurisdiction to entertain
a bill to enjoin the mayor and aldermen of a city from
removing a party from office and appointing a successor,
and from preventing the party from discharging his duties
after removal by them, as the party's remedy at law is
complete by *quo warranto* against the successor, or by
*mandamus* against the mayor and councilmen.

In *State of Georgia* v. *Stanton*, 6 Wallace, 50, a bill was
filed by the State of Georgia against the Secretary of War
and other officers representing the executive authority of
the United States, to restrain them in the execution of the
acts of Congress known as the Reconstruction acts, on the
ground that the enforcement of those acts would annul and
totally abolish the existing State government of the State,
and establish another and different one in its place, and
would, in effect, overthrow and destroy the corporate
existence of the State, by depriving it of all means and
instrumentalities whereby its existence might and other-
wise would be maintained; and it was held that the bill

called for a judgment upon a political question, and that it would not, therefore, be entertained by a court of chancery. And it was further held that the character of the bill was not changed by the fact that, in setting forth the political rights sought to be protected, it averred that the State had real and personal property, such, for example, as public buildings, etc., of the enjoyment of which, by the destruction of its corporate existence, the State would be deprived, such averment not being the substantial ground of the relief sought.

*In re* Sawyer *et al.*, 124 U. S. 200, it was held that the Circuit Court of the United States had no jurisdiction to entertain a bill in equity to restrain the mayor and committee of a city in Nebraska from removing a city officer, upon charges filed against him for misfeasance in office, and that an injunction issued on such bill, as well as an order committing certain persons for contempt in disregarding the injunction, was absolutely void. In that case the court say: "The office and jurisdiction of a court of equity, unless enlarged by express statute, are limited to the protection of rights of property. It has no jurisdiction over the prosecution, the punishment or the pardon of crimes or misdemeanors, or over the appointment and removal of public officers. To assume such jurisdiction, or to sustain a bill in equity to restrain or relieve against proceedings for the punishment of offenses, or for the removal of public officers, is to invade the domain of the courts of common law, or of the executive and administrative department of the government." In support of its decision, the court cites, among various other cases, the decisions of this court in *Delahanty* v. *Warner*, *Sheridan* v. *Colvin*, and *Dickey* v. *Reed*, above referred to, and quotes with approval the passage in the opinion in *Sheridan* v. *Colvin* above set forth, taken in substance from Kerr on Injunctions.

Other authorities of similar import might be referred to, but the foregoing are amply sufficient to show that, wherever the established distinctions between equitable and common law jurisdiction are observed, as they are in this State, courts of equity have no authority or jurisdiction to interpose for the protection of rights which are merely political, and where no civil or property right is involved. In all such cases the remedy, if there is one, must be sought in a court of law.   The extraordinary jurisdiction of courts of chancery can not, therefore, be invoked to protect the right of a citizen to vote or to be voted for at an election, or his right to be a candidate for or to be elected to any office.   Nor can it be invoked for the purpose of restraining the holding of an election, or of directing or controlling the mode in which, or of determining the rules of law in pursuance of which, an election shall be held.   These matters involve in themselves no property rights, but pertain solely to the political administration of government. If a public officer, charged with political administration, has disobeyed or threatens to disobey the mandate of the law, whether in respect to calling or conducting an election or otherwise, the party injured or threatened with injury in his political rights is not without remedy.   But his remedy must be sought in a court of law, and not in a court of chancery.

The only decision to which we are referred, in which relief of the character of that sought in this case was given in what was in substance an equitable proceeding, is *State* v. *Cunningham*, 83 Wis. 90.   That was an original proceeding, brought in the Supreme Court of Wisconsin, to test the validity of an apportionment law passed by the legislature of that State, dividing the State into legislative districts.   An injunction was prayed to restrain the Secretary of State from publishing notices of an election of members of the senate and assembly in the legislative districts attempted to be created by the act, and from filing

and preserving in his office certificates of nomination and nomination papers, and from certifying the same to the several county clerks. The court entertained jurisdiction of the proceeding, and on final hearing awarded a perpetual injunction, as prayed for.

We have carefully considered the case as reported, and if we understand it correctly, it can not, in our opinion, be regarded as an authority in favor of equity jurisdiction in the case before us. In this connection it may be borne in mind, as a matter of some importance, that the Wisconsin code of procedure attempts to abolish the distinction between actions at law and in equity; but as to precisely how far that statutory provision has been held to have broken down the distinctions between common law and equitable remedies, we do not pretend to be accurately advised. But whether that distinction is held to remain practically unaffected by the statute or not, it appears from the opinion of the court that its jurisdiction to grant a remedy by injunction in that case was based solely upon that provision of the Constitution of Wisconsin which gives to the Supreme Court jurisdiction "to issue writs of *habeas corpus, mandamus,* injunction, *quo warranto, certiorari,* and other original and remedial writs, and to hear and determine the same." In construing this provision of the Constitution, the court holds that these various writs, and injunction among them, are prerogative writs, and that the Supreme Court is thereby given original jurisdiction in all judicial questions affecting the sovereignty of the State, its franchises and prerogatives, or the liberty of the people, and that injuction and *mandamus* are thereby made correlative remedies, so as to authorize resort to injunction to restrain excess of action, in the same class of cases where *mandamus* may be resorted to for the purpose of supplying defects. Thus the court, in the opinion, quoting the language of a former decision, in which this constitutional provision is construed, say: "And it is very safe to assume that the

Constitution gives injunction to restrain excess in the same class of cases as it gives *mandamus* to supply defect; the use of the one writ or the other in each case turning solely on the accident of over-action or shortcoming of the defendant. And it may be, that where defect and excess meet in a single case, the court might meet both, in its discretion, by one of the writs, without being driven to send out both, tied together with red tape, for a single purpose." And again: "Inasmuch as the use of the writ of injunction, in the exercise of the original jurisdiction of this court, is correlative with the writ of *mandamus*, the former issuing to restrain where the latter compels action, it is plain that this case, as against the respondent, is a proper one for an injunction to restrain unauthorized action by him in a matter where his duties are clearly ministerial, and affect the sovereignty, rights, and franchises of the State, and the liberties of the people."

It thus seems plain that, in view of the construction of the Constitution of Wisconsin, adopted by the Supreme Court of that State, the prerogative writ of injunction, of which that court is given original jurisdiction, is a writ of a different nature, and having a different scope and purpose from an ordinary injunction in equity. Where the established distinctions between equity and common law jurisdiction are observed, injunction and *mandamus* are not correlative remedies, in the sense of being applicable to the same subject matter, the choice of the writ to be resorted to in a particular case to depend upon whether there is an excess of action to be restrained or a defect to be supplied. The two writs properly pertain to entirely different jurisdictions and to different classes of proceedings, injunction being the proper writ only in cases of equitable cognizance, and *mandamus* being a common law writ, and applicable only in cases coming within the appropriate jurisdiction of courts of common law. Besides, it would seem that in Wisconsin the writ of injunction, of which the Supreme

Court is given original jurisdiction, is not limited, as is the jurisdiction of courts of equity, to cases involving civil or property rights, but may be resorted to in all cases "affecting the sovereignty of the State, its franchises or prerogatives, or the liberties of the people," thus including within its scope the protection of political as well as civil or property rights. ⌄ It thus seems plain that *State* v. *Cunningham* was decided under a judicial system differing essentially from ours, and that it can not be resorted to as an authority upon the question of the jurisdiction of courts of equity in this State in cases of this character.

The jurisdiction of a court of equity is sought to be sustained in the present cases, however, on the ground that the bills are by tax-payers to restrain the misapplication of public moneys, and the incurring of an unauthorized municipal indebtedness. If it be admitted that a tax-payer may, in a proper case, file a bill in his own name, for such a purpose—a question which we do not deem it necessary to discuss—it seems plain that no case for the interposition of equity on that ground is here made out.

It may be noticed, in the first place, that while it is alleged that holding the election will necessitate a certain amount of election expenses, that fact does not seem to be set forth as an independent, substantive ground for relief, nor does either bill pray that the election itself be enjoined, so as to avoid the incurring of an illegal municipal indebtedness. The act sought to be restrained in one case is the issuing of notices of the election of members of the General Assembly in and for the districts formed by the Apportionment act of 1893, and the act sought to be enjoined by the other bill is, the certifying by the Secretary of State of the name of any candidate nominated for election under the Acts of 1893, or the Act of 1882. But it is not alleged or shown in any way, either directly or by inference, that either of the acts thus sought to be restrained will of themselves involve the expenditure of public money or the incurring of any indebtedness.

The expenditures which the complainants, as tax-payers, might seek to avoid, if any such are to be incurred, will result from the holding of the election, and neither bill prays for an injunction to restrain the public officers from incurring the expenses incident to holding the election itself. Indeed, it is so well settled that equity will not interpose to restrain the holding of an election, that in drafting the bills the pleaders did not venture to pray for that species of relief. Furthermore, as is of course well known, the election to be held in November, 1894, will not be confined to the choice of senators and representatives in the General Assembly, but it will be for the election of State treasurer, members of Congress, and certain county officers, and it is not pretended that, so far as those officers are concerned, the election will be in any respect illegal or unauthorized. Nor is it shown, at least by any clear or intelligible averment, that voting for senators and representatives in the General Assembly in and for the districts created by the Apportionment acts in question, will in any material degree increase the expense of holding the election. In no view then can it be held that the complainants, as tax-payers, have made out a case for an injunction to restrain the public authorities from doing acts whereby an illegal public indebtedness will be incurred.

After giving the cases patient consideration, we are unanimously of the opinion that these bills present no cases entitling the complainants to relief in a court of equity. Having reached that conclusion, it is unnecessary for us to express any opinion upon any other question raised by counsel in their arguments, but upon the sole ground that the cases made by the bills are not within the jurisdiction of a court of equity, the decrees of the courts below dismissing the bills for want of equity will be affirmed.

*Decrees affirmed.*