Commonwealth of Pennsylvania ex rel. Joseph Howley *v.* J. C. Mercer, W. W. Murray and J. A. Clark, County Commissioners of the County of Allegheny, Appellants.

*Election law—Instructions to voters—Discretion of county commissioners —Jurisdiction of court of common pleas—Act of June* 10, 1893.

The courts have no jurisdiction to direct what instructions the county commissioners shall or shall not give to voters as to marking ballots.

Argued Jan. 24, 1899. Appeal, No. 14, Oct. T., 1898, by defendants, from order of C. P. No. 2, Allegheny Co., Jan. T., 1899, No. 289, on petition for mandamus. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Reversed.

Petition for mandamus.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was the order of the court.

*S. B. Schoyer,* with him *N. S. Williams, S. Schoyer, Jr., William Yost* and *G. W. Williams,* for appellants.

*D. T. Watson, R. A. Balph* and *George W. Guthrie,* for appellee, submitted printed brief.

OPINION BY MR. JUSTICE DEAN, February 27, 1899:

At the general election of November 8, 1898, there were two candidates for judge of court of common pleas, No. 3, of Allegheny county. One was the regularly nominated candidate of the republican party, and had a place in the republican column on the ballot; the other, it had been judicially decided, was not the lawful nominee of either of the political parties having the right to a column; his name was therefore placed by itself on the ballot under the heading "nonpartisan judiciary" with the square ☐ opposite the name, but the name of no other candidate for office was in the space above or below it. A blank column in which might be written by the voter the name of any candidate for any office, was on the extreme right of the

ballot. But one name of a candidate for judge appeared in a regular party column and that was the candidate of the republican party; therefore, a vote for the straight ticket of any other party by a cross in the circle at the head of the column was a vote for all candidates for offices to be filled, except for judge; for that, no candidate would be voted for by the circle mark.

As the office to be filled was a highly important one it may be assumed, that nearly every voter desired to indicate by his ballot his choice for one or the other candidate. But with all those who did not want to vote the straight republican ticket it was a matter of uncertainty how they should mark their ballots for judge. The county commissioners under the 16th section of the ballot law undertook by advice of counsel to issue with the ballots certain instructions, in substance that a cross (X) marked in the square at the right of the name of each candidate indicated a vote for each candidate so marked; that a cross within the circle at head of the column indicated a vote for every candidate in that column; that those who did not desire to vote a straight ticket must not mark a cross in the circle at the head of the column, but must mark opposite the name of each candidate. The instructions also called attention to a number of provisions of the law in other sections. They further, in response to a request from plaintiff disclaimed authority to give any other instructions specially applicable to the marking of ballots for judge. It will be noticed, the necessary inference from the instructions was, that all voters who did not vote the straight republican ticket and desired to vote for one of the candidates for judge must mark a cross opposite the name of every candidate for the other offices voted for as well as opposite the name of the judicial candidate. After the refusal by the commissioners to give other or further instructions, as requested, that is, that the voter could vote for all the candidates in the column by a mark in the circle at the top of it, and then for one or the other candidates for judge by a cross opposite his name, Howley, the plaintiff, presented his petition in the court below setting out the facts substantially and averring, that it was the duty of the commissioners to give instructions in advance fitting the special facts, and praying for a mandamus upon them. To this the commissioners made answer, that they had given such instructions as were prescribed

by the act, and that the responsibility was thereafter on the voter to express his intention by his ballot; and they further denied the jurisdiction of the court to award the mandamus prayed for. The issue thus raised was immediately argued and the court, although concurring in the interpretation of the act with the petitioner, declined to issue the mandamus, because of the nearness of election day, but used this language: "I suggest to the commissioners, if they can conveniently do so, to give instructions to this effect that, where in the column of a party there is no candidate named for an office to be filled at the election, the voter may make a cross (X) in the circle above the column, and may also vote for a candidate for that office by a cross (X) at the right of his name." Then the commissioners acting under the advice of counsel declined to adopt the suggestion of the court, whereupon, Howley presented a supplementary petition, setting out the fact and praying for a peremptory mandamus, or such other process as would protect the voter in the exercise of the right of suffrage, as the court was of opinion he was entitled to. On hearing that petition the court decided: "It was the duty of the commissioners and their solicitor to submit to that opinion until reversed by a higher tribunal," and further directed that a restraining order be issued directed to the commissioners prohibiting them from giving any instruction to voters inconsistent with it. Counsel for commissioners then moved to vacate the restraining order, which the court after hearing, refused, it being of opinion that it had jurisdiction to issue it, and that the interpretation put upon the law was a proper one and should have been followed by the commissioners in their instruction to voters We now have this appeal by the commissioners from the decree restraining them from sending out the instructions adopted by them on the advice of their solicitor.

We are all clearly of opinion, that the court below had no such jurisdiction as it assumed in the matter. The 16th section of the ballot law is as follows:

"The county commissioners of each county shall provide for each election district in which an election is to be held one set of such ballots not less than seventy-five for every fifty and fraction of fifty voters therein, as contained upon the assessor's list. They shall also prepare full instructions for the guidance

of voters as to obtaining ballots, as to the manner of marking them, and the method of gaining assistance, and as to obtaining the new ballots in place of those accidentally spoiled, and they shall respectively cause the same, together with copies of sections thirty to thirty-five inclusive of this act, to be printed in large, clear type on separate cards, to be called cards of instruction."

It is wholly immaterial what definition is given the duties thus imposed on the commissioners, whether ministerial or discretional or a mixture of both, the authority to give instructions is undoubted, and the scope of it is clearly expressed. They shall give instructions for the guidance of voters as to the manner of marking the ballots. There is no authority conferred on the courts to give in advance instructions to voters as to the manner of marking; there is no hint even given of authority to the commissioners to ask the advice of the courts in the performance of this duty, nor of authority in the courts to give such advice if asked. The court here, however, did more than advise; it in effect commanded; advice is optional with the giver, that is, he can advise or remain silent; it is optional with him to whom it is directed; that is, he can accept or decline it. The court said: "But I suggest to the commissioners if they can conveniently do so to give instructions" in accordance with this opinion; they did not adopt the suggestion, then came an order backed by the power of the commonwealth to enforce it. As long as the opinion of the court took no other shape than that of advice or suggestion it was entitled to the respect which is accorded to that of all learned and reputable lawyers; as those to whom it is directed may follow it or not as they choose we would not concern ourselves long with an appeal from advice; we would at once dismiss it. But when the advice, by an assumed judicial order capable of enforcement, takes the form of a positive law or rule of action, then an appeal lies to us and we are bound to determine whether the court had jurisdiction. All the reasons given by the court below and counsel in their argument why the court should have jurisdiction in such a grave matter before the ballot is cast and a possible error irremediable, are wholly without weight, for the statute withholds such jurisdiction from the courts and expressly confers it upon other officers of the commonwealth.

The commissioners are not bound by the opinion; the court itself was not bound by it. On a contest between candidates, after the election, as to the validity of the ballots cast under its advice, it could have wholly disregarded a plea of res adjudicata, and have adopted the opposite view; even the parties to the contest could well have argued that they never had had a judicial hearing on the question at issue. In what we have said, we decline to express any opinion as to what instructions as to marking ballots, in view of the facts, the commissioners should have given the voters; we will not advise the court below whether its advice was good or bad; we content ourselves with saying it had no jurisdiction to enter the restraining order. Therefore the decree for it is reversed and set aside at the costs of appellees.