R. T. JOUGHIN, as Sheriff of Hillsborough County, Florida, and individually, *Petitioner,* vs. L. L. PARKS, Judge, J. W. SCALLY, et al., *Defendants.*

143 So. 145, 306.

147 So. 273.

En Banc.

Opinions filed June 27, 1932, August 25, 1932, and March 17, 1933.

834

*Chas. F. Blake, Frank T. Phillips, Mabry, Reaves & White,* and *R. J. Duff,* for Petitioner;

*Wm. C. Pierce,* contra.

Opinion filed June 27, 1932.

Per Curiam.—An injunction will not issue for the purpose of restraining the holding of an election, or of directing or controlling the mode in which, or of determining the rules of law in pursuance of which, an election shall be held, because the holding and conduct of an election during its progress is a political matter with which courts of equity have nothing to do. Pomeroy's Equity Jur. (4th Ed.) sections 1753-1754 and cases cited. See Markett vs. Sumter County, 60 Fla. 328 and cases cited.

The rule in this State was only modified in the recent case of McGregor vs. Burnett, 141 So. 599, to the extent of holding that where "prior to an election" palpable violation of the registration or election laws is about to take place, and is properly charged in a bill in equity by an elector he may have "injunction or such other appropriate remedy as is available to him under the law" to prevent fraud and palpable violations of the election laws which are charged as about to be committed prior to the election such as was the situation in that case dealt with.

The Constitution provides (Section 9, Article VI) that the *Legislature* shall enact such laws as will preserve the purity of the ballot, and in the absence of some statute on the subject, courts of equity are without jurisdiction to violate the general rule referred to in the first paragraph of this opinion, by substituting through a court of chancery remedies for alleged threatened violations of the election laws, or by controlling or directing the manner in which the election shall be conducted on the day appointed by law for carrying it out.

The case of People vs. Tool, 86 Pac. 224, 6 L. R. A. (N.

S.) 822, merely recognizes the right of the Attorney General in his official capacity to an injunction under the Colorado law to prevent and redress public wrongs, such as a conspiracy to carry an election by fraud, is not applicable to the case at bar, if applicable in this State at all under our previous holding in Markett vs. Sumter County, 60 Fla. 328, 53 Sou. 613, where we held that "the jurisdiction of courts having general equity powers does not include mere election contests of any kind unless so provided expressly or impliedly by organic or statutory laws."

A writ of prohibition is proper to restrain a court of equity about to act in excess of its powers, where no plain, complete and adequate remedy by appeal is shown. See State vs. Board of Trustees of Salvation Army, 135 So. 781.

The purpose of the bill and the prayer for relief in this case appearing to be one to direct or control the mode in which, or of determining the rules of law in pursuance of which, the primary election of June 28th, 1932, is to be held in Hillsborough County on the day of the election, by the officers and officials having duties under the law to perform in connection therewith, it appears that the court is acting in excess of its jurisdiction in entertaining such bill and that a rule nisi in prohibition should issue as prayed.

Rule nisi in prohibition issued.

BUFORD, C.J., AND WHITFIELD AND DAVIS, J.J., concur.

ELLIS AND BROWN, J.J., concur specially.

ELLIS, J. (Concurring specially).—In the case of McGregor v. Burnett, 105 Fla. 447, 141 South. Rep. 599, the Court seemingly held that a chancery court had jurisdiction by injunction upon a bill filed by a resident voter, and taxpayer charging "fraud or corruption" to restrain an illegal action by a county official which would "corrupt the ballot and destroy its purity." The lang-

uage of the Court was: "that, in cases where fraud or other palpable violation of the registration or election laws is charged prior to an election, any elector is entitled to his relief by injunction or such other appropriate remedy as is available to him under the law."

The complainant in that case sought an injunction to restrain certain acts of the Tax Collector in the matter of receiving money for poll taxes and issuing receipts therefor. This Court proceeded to discuss the sufficiency of the allegations of the bill and held that because "No charge of fraud or corruption is involved" the decree dissolving a temporary restraining order and sustaining a demurrer to the bill should be affirmed.

In this departure from the generally accepted rule that the right of suffrage being political in character its assertion and protection are not properly matters for the cognizance of courts of equity, this Court presumably acted with its customary care after due consideration. No distinctions were made between those acts of "fraud or other palpable violation of the registration or election laws," which may have occurred before the day of election and those which may occur on election day. Nor was any explanation made of the phrase "prior to an election."

I do not conceive the word "election," as used in the statutes regulating elections, to mean that particular phase of the political procedure by which a person is chosen for office, commonly referred to as voting or depositing a ballot in a ballot box. The election is the entire procedure from the preparation of the voting lists to the certification of the result. I therefore interpret the language of the opinion to mean that "any act of fraud or corruption" having for its purpose the corruption of the ballot or destruction of its purity would be enjoined upon bill filed by a resident voter and taxpayer, whether the alleged act of "corruption or fraud" occurred before the day fixed

by law for depositing ballots or whether they occurred on that day or even after that day and before the certification of the result, the election completed.

It is quite generally conceded to be the rule that the right of suffrage is a political right as distinguished from a civil right and that the assertion and protection of a political right is not a matter properly for the cognizance of a court of equity for the subject of the jurisdiction of such courts is civil property and they are not concerned with the maintenance of purely political rights where no civil or property right is involved. See 9 R. C. L. 987, 1001, and cases cited; Walls v. Brundidge, 109 Ark. 240, 160 S. W. Rep. 230, Ann. Cas. 1915C, 980 n; 14 R. C. L. 375; Fletcher vs. Tuttle, 151 Ill. 41, 37 N. E. Rep. 683, 42 A. S. R. 220, 25 L. R. A. 143; 4 Pomeroy's Eq. Jurisprudence (4 Ed.) 4067, Sec. 1753.

It has been held that courts are without power to direct what instructions shall be given to voters as to marking ballots and to issue a restraining order prohibiting the commissioners from giving instructions inconsistent with those directed. Commonwealth v. Mercer, 190 Pa. 134, 42 Atl. Rep. 525.

In view of the language used in the McGregor-Burnett case, *supra,* I am inclined to the view that while no injunction would lie to direct or to control the manner of holding an election, or to restrain the sheriff or other officers of an election from doing a threatened act in connection with the manner of conducting the voting or counting of ballots, an injunction would lie to restrain the members of a conspiracy, consisting of the sheriff and election officers, to corrupt the ballot and destroy its purity where appropriate allegations are made in the bill to charge the existence of the conspiracy and its fraudulent and corrupt purpose.

I have read the bill as carefully as the few hours avail-

able would permit, but I find no such allegation as to the balloting which is to take place tomorrow, or the manner of conducting the voting. I think therefore that the writ of prohibition should issue. I am authorized to state that Mr. Justice Brown concurs in the above view.

BROWN, J., concurs.

BUFORD, C.J. (Specially Concurring).—I have concurred in the Per Curiam opinion prepared by one of the Justices of this Court and I can readily agree with most of what Mr. Justice Ellis has said in the concurring opinion prepared by him, but I do not construe the language in the case of McGregor vs. Burnett, 105 Fla. 447, 141 Sou. 599, as it is construed by Mr. Justice Ellis. The language used in any opinion must be taken in connection with the facts of the case therein dealt with. In the case of McGregor vs. Burnett we were dealing with alleged conduct being indulged in by a Tax Collector prior to the election, the words "prior to the election" being conceived to mean prior to the commencing of balloting or voting on election day, and, therefore, the language: "That, in cases where fraud or other palpable violation of the registration or election laws is charged prior to an election, any elector is entitled to his relief by injunction or such other appropriate remedy as is available to him under the law," as used in the case of McGregor vs. Burnett, supra, is to be construed to apply to conduct indulged in prior to the day of election.

In holding as we did in the McGregor case, the Court was conscious of recognizing equity jurisdiction as extending possibly to a limited extent into a field where it has been by the great weight of authority heretofore held not to exist. See cases cited in the two other opinions filed in this cause.

In addition to the good and sufficient reasons which have been stated in both the other opinions, it appears to me

that the court of chancery was without jurisdiction in the case at bar because the purpose of the suit was to require the sheriff to perform the duties of the sheriff's office in connection with the election in the manner prescribed by statute and not otherwise and to require the officers of the election in various precincts to perform the duties of their respective offices in the manner prescribed by statute and not otherwise. It must be recognized that if the complainants were entitled to the relief which they sought as to the conduct of these officials, in the holding of an election, a full, complete and adequate method is provided by law by way of mandamus to compel each and every of them to perform their respective duties in the manner provided by law and not otherwise.

It follows that if equity was without jurisdiction because of the full, adequate and complete remedy at law to require the several officials to perform their respective duties as required by law and not otherwise, then in the absence of statutes there remained no basis upon which the court of chancery could ground its authority to appoint elisors to serve writs or orders which the court was without jurisdiction to issue, nor to appoint watchers to observe the conduct of the respective officials for the purpose of reporting any acts which might occur in violation of such orders. I am unable to conceive that public officers may by conspiring with one another to fail and refuse to perform their respective official duties or to perform their official duties in a manner contrary to that provided and directed by law, place themselves beyond the reach of the writ of mandamus and by such conspiracy confer upon the court of chancery jurisdiction which it admittedly would not have except because of the element of conspiracy.

It appears to me that the principles of law above stated are so elementary and universally recognized as to require the citation of no authorities in support thereof beyond

those which have been cited in the two other opinions filed in this cause.

WHITFIELD AND DAVIS, J.J., concur.

DAVIS, J. (Concurring with Buford, C.J.).—The holding in McGregor vs. Burnett, 141 Sou. Rep. 599, is in harmony with what we have held in this case. A primary election is a party matter, but regulated and controlled in this State by statutory law. Any elector or candidate alleging himself to be a member of a party which is about to hold a primary election has a *proprietary* legal interest, as well as a political interest, in the *evidence* of party membership which the officers are required to get ready prior to the primary, such as correct registration lists, correct records of poll tax payments to show those who are qualified to vote, etc. Therefore the remedy at law being inadequate, an injunction has to protect the electors or candidates of the party from having their legal interest in the evidence of party membership unlawfully tampered with, such as by palpable violations of law or acts of fraud in making persons names appear as voters who are not under the law legally entitled to be considered such. See Gilmore vs. Maples, 188 S. W. 1037, for a discussion of this subject which is in harmony with my view and not inconsistent with the view expressed in the main opinion in this case.

WHITFIELD, J., concurs.

---

Opinion filed August 25, 1932.

PER CURIAM.—Rule nisi in prohibition was issued in this case on June 27th, 1932, returnable July 10th, 1932. The primary election involved was held on June 28th, 1932, so the object of the original equity suit could not be accomplished, should a rehearing be granted and the order awarding the rule nisi be vacated as prayed by the respondents.

But the questions here involved are public questions of great public concern, and although the equity case itself may now be regarded as *moot*, this court is committed to the doctrine that in extraordinary cases of public interest, the case, though subject to dismissal as *moot*, may nevertheless be retained on the docket and decided on its merits, in order to dispose of the public questions involved, for the benefit of the bench and bar in future cases of like nature. See Southern Telephone and Construction Co. case, 65 Fla. 67, 61 Sou. Rep. 119, where it was said that a case like this may be retained ''for the determination of questions properly presented involving the duties and authority of public officials that are of general interest to the public'' though the ''litigation may not be effective in all respects because of circumstances arising'' after this Court has first acquired jurisdiction in the matter.

The legal theory upon which the rule nisi was granted by a majority of the five Justices present when the application for it was presented, is stated in the *per curiam* opinion filed at the time. Whether that statement should be adhered to or modified is still open for consideration on the merits of the case upon an application for a writ of prohibition absolute, if the case is retained for further consideration.

What, if any, jurisdiction, courts of equity have in this state over the administration of primary election laws is a question raised in the case at bar, and one that should be definitely and deliberately settled by this Court in the case now before it. The particular election concerned has occurred, but the questions involved remain and are of great public importance for the guidance of the circuit courts and public officials in future elections. By considering and deciding these questions now when the case is in such situation that it can be given more deliberate consideration and study than is afforded for most election

cases which reach this court only a few days before action must be taken by us, if at all, greater opportunity is afforded for briefs and arguments than we might otherwise be able to have should the present case be dismissed and the questions left undecided at this time.

It is therefore ordered upon the authority of State of Florida, ex rel. R. R. Commissioners vs. Southern Telephone and Construction Co., 65 Fla. 67, supra, that the present case be retained on the docket, that the petitioner and respondents shall file briefs within the times ordinarily allowed by the rules of this court, and that the case be set for oral argument before this court as the first case to be heard when the court resumes the hearing of oral arguments; that the question to be argued shall be whether or not a writ of prohibition absolute should be granted under the circumstances of this case and the record hereof.

BUFORD, C.J., AND WHITFIELD, ELLIS, TERRELL, BROWN AND DAVIS, J.J., concur.

---

Opinion filed March 17, 1933.

TERRELL, J.—June 24th, 1932, J. W. Scally and other complainants filed their bill in the Circuit Court of Hillsborough County seeking to restrain R. T. Joughin, as Sheriff, his deputies and the inspectors of the various election precincts from violating any law regulating the holding of the second, or run-off primary election to be held in said county June 28th, 1932. Before any action was taken by the chancellor on the application of complainants for a restraining order petition was filed in this court by R. T. Joughin for writ of prohibition against L. L. Parks, as Judge of the Circuit Court of Hillsborough County and the complainants in the injunction suit seeking to prohibit them from proceeding further to litigate said suit. A rule nisi was issued and the cause now comes on for determination of the question of whether or not a writ of

prohibition absolute should be entered. See foregoing opinion rendered June 27, 1932, 143 So. 145, and opinion rendered August 25, 1932, 143 So. 306, for previous considerations of this case.

In Joughin vs. Parks, 143 So. 306, *supra,* we purposely held the cause on the docket to determine "what, if any, jurisdiction courts of equity have in this state over the administration of primary election laws." Petitioner states the question involved as follows: Is a primary election a political right over which courts of equity as administered in this state have any jurisdiction? No other question is presented.

A political right has reference to those rights exercised by the citizen in the formation, administration or conduct of the government. In this sphere political rights take a wide range whether procured through constitutional, statutory or use methods. The right to vote or otherwise participate in an election, to be a member of a political party, to be a candidate for and hold office, petition, to execute governmental duties and to encourage political theories that make for the betterment of the citizen are among some of the most common political rights. Political rights are distinguished from civil rights on the ground that the latter are those common to every citizen or inhabitant not connected with the organization, administration or conduct of the government. The right to contract, to own and protect property, to trial by jury, to enter into the marital relation and other rights that may be redressed in a civil action are enumerated as civil rights.

In jursdictions recognizing distinct courts of law and equity like Florida the rule is well settled that equity is without authority to determine questions involving rights that are purely political, nor will they undertake the protection of such rights by the writ of injunction. See foregoing opinion rendered June 27, 1932, 143 So. 145; State

*ex rel.* Landis vs. Tedder, 106 Fla. 140, 143 So. 148; Fletcher vs. Tuttle, 151 Ill. 41, 37 N. E. 683; People *ex rel.* Attorney-General vs. Tool, 35 Col. 225, 86 Pac. 224, 229, 231; Sheridan vs. Colvin, 78 Ill. 237, 14 R. C. L. 374, 21 Corpus Juris 156, 5 Pomeroy's Equity (4th Ed.) Parc. 1746; Bishpain Equity (10th Ed.) 64, High on Injunctions (4th Ed.) Par. 20B, 1312, Keer Injunctions (5th Ed.) 10; Shoemaker vs. City of Des Moines, 129 Iowa 244, 105 N. W. 520.

This rule recognizes degrees in political rights and applies only where rights purely political are involved. One's right may not be purely political when it has coalesced with a civil or personal right or has been clothed by the constitution or statute with a quality superior and beyond the mere exercise of a political or party function. In such cases the question of whether or not a political right has been or is about to be exercised in compliance with law is a judicial question for determination by the courts.

The right to vote, for example, is not inherent. It is secured by law. So long as the security extends only to the naked right to vote it is purely political but when the law takes it over and throws around it safeguards in the interest of the voter and requires it to be exercised under rules and regulations to safeguard the ballot and the body politic it becomes more than a naked political right and will be protected in like manner as a civil right. A court of equity will in other words not attempt to supervise or control the management of a political party or a political function but when the law prescribes rules and regulations for the party to conduct an election any interested elector may invoke the aid of a court of appropriate equitable remedies to enforce such rules and regulations.

Generally the jurisdiction of a court of equity, unless enlarged by statute or the constitution is limited to the

protection of the rights of property or civil rights. *In re* Sawyer, 124 U. S. 200, 8 Sup. Ct. Rep. 482, 31 L. Ed. 402. To assume jurisdiction to control the exercise of political powers, or to protect purely political rights of the individual, would be an invasion of the function of the common law or the domain of the other departments of government, but we do not consider the exception to this rule here prescribed as such an invasion. Green vs. Mills, 69 Fed. 852, 30 L. R. A. 90, 16 C. C. A. 576, 159 U. S. 651, 40 L. Ed. 293, 15 Sup. Ct. Rep. 132.

Prohibition under our constitution is an extraordinary remedy and will not be enforced if the party seeking it has an adequate remedy in a court of law. The remedy at law to defeat this extraordinary writ must, however, be adequate to afford the relief the case demands, otherwise it is not sufficient. State *ex rel.* McCaffery vs. Aloe, 152 Mo. 466, 54 S. W. 484, 47 L. R. A. 393; Arnold vs. Henry, 155 Mo. 48, 55 S. W. 1089. The writ of prohibition will not be invoked for slight reasons but only in emergency cases to forestall an impending, present injury. State *ex rel.* Miller vs. Superior Court of Spokane County, 40 Wash. 555, 82 Pac. 877.

The bill of complaint referred to in the forepart of this opinion was brought by J. W. Scally and other complainants as citizens and electors of Hillsborough County against R. T. Joughin, as Sheriff, and all his deputies including the inspectors of each election precinct in said county, there being seventy-three in all. The bill charges a multitude of irregularities and violations of the election laws by the Sheriff and his deputies including the inspectors in the conduct of the first primary election of June 7th, 1932, and alleges that they have all reason to believe that such irregularities and illegalities will be continued in the second primary election of June 28th, 1932. It also contended that the bill in effect charges a conspiracy on the part of

the Sheriff and his deputies and some of the inspectors to violate the election laws and to thwart the voice of the people in the conduct of said election. It prays for a restraining order against the Sheriff and his deputies as follows:

"1. From violating any of the election laws at the second or run-off primary election to be held in said Hillsborough County, Florida, on the 28th day of June, 1932, and directing and commanding them, and each of them, to strictly obey and enforce each and every provision of the election laws of the said State at said election, and enjoining them, and each of them, jointly and severally, from conspiring to violate any of said election laws, or carrying out any conspiracy heretofore entered into to violate the election laws of said state at said election on said election day and at all times prior thereto.

2. From being interested in fostering or furthering the candidacy of any candidate who is being voted upon for any office on said date, and particularly the office of said sheriff of Hillsborough County, at each and every election precinct in said Hillsborough County.

3. From allowing or permitting any person to vote at said election on the 28th day of June, 1932, in any election precinct in said Hillsborough County unless said person is a duly qualified elector, duly registered and his poll tax paid for the years 1930 and 1931, and duly qualified to vote in the precinct in which he presents himself for voting.

4. That said defendant, R. T. Joughin, as Sheriff, be so enjoined from appointing more than one deputy sheriff at any one polling place in said county and from instructing said deputy sheriff so appointed other than to maintain the peace at the respective polling places to which appointed, and to answer the lawful demands of the majority of the election officials at the respective precincts where on duty, and to arrest all violators of the election laws, and, if necessary, to preserve the peace, form a posse from the bystanders for that purpose.

5. That said sheriff, and his deputies, both regular

and special, and each of them, be enjoined and restrained and commanded to refrain from interfering in any manner with the elisors and watchers appointed by the court in this suit, and be ordered and directed to prohibit anyone else from interfering with said elisors and watchers on duty at each and every polling place in said county at said election from the date of entry of said order until after the ballots have been called, tallied, canvassed, counted and returns made thereof at each and every election precinct in said county, as required by law.''

As to the precinct inspectors the prayer of the bill in more than a thousand words seeks to control by the writ of injunction every act, proceeding or deed on their part in the conduct of said election. Some of the acts of the inspectors which complainants seek to control involve plain mandatory requirements of the law, some are discretionary, while many are speculative or anticipatory and apparently based on a mere suspicion that the law will be violated.

The bill further prays that a sufficient number of elisors be appointed by the court to make service of all process in that suit and that the court appoint a number of ''good and reputable voters,'' at least two in each polling precinct in the county and four or five in the precincts where the officials thereof are named as defendants therein, the duty of said appointees being to observe the conduct of the election in each and every polling place and to report any and all violations of the election laws committed in any of said precincts at the primary election to be held on the 28th day of June, 1932. It is further prayed that said electors so appointed be at the opening of the polls and continue there till all votes are cast, to make a record of the total vote cast in each precinct for every candidate appearing on the ballot and make return thereof to the court, to observe at all times the general conduct of the election and make report to the court of

any violations of the injunction and that they be authorized to wear a badge bearing the inscription, "Circuit Court Official."

The responsibility for holding primary elections is on the inspectors who are designated by the county commissioners and their duties prescribed by law. The sheriff of the county has nothing whatever to do with the conduct of an election except to see that order is maintained about the polls as elsewhere in the county and to apprehend violators of the election laws as required by Section 5931 R. G. S. of 1920, Section 8195 C. G. L. of 1927. He is not allowed within the polling places unless summoned there by a majority of the inspectors. Sections 284 and 271 R. G. S. of 1920; Sections 340 and 327 C. G. L. of 1927.

Inspectors are clothed with full power to hold and conduct primary or other elections and for certain purposes are vested with police power to do this. Section 346 R. G. S. of 1920; Section 403 C. G. L. of 1927. Their duties are meticulously prescribed by law and they are provided with instructions for the performance of their duties by the county commissioners. The sheriff is required to provide one deputy at each polling place to maintain order, said deputy at all times subject to the command of the inspectors. Section 283 R. G. S. of 1920; Section 339 C. G. L. of 1927. We know of no authority for a chancellor appointing elisors or others to observe the conduct of the election in each precinct and report any violations of the election laws by the inspectors. Section 5931 R. G. S. of 1920; Section 8195 C. G. L. of 1927, authorizes the Governor, when he deems it advisable, to appoint special officers to see that violators of the primary election laws are apprehended and punished. The authority of such officers would extend to violations by the inspectors or any other persons connected with or about the election.

Section 5877 R. G. S. of 1920; Section 8140 C. G. L. of

1927 provides for watchers at each precinct to see that the ballots are correctly and accurately counted and tallied. Section 5877 and Section 5931 R. G. S. *supra,* would, therefore, seem to furnish ample means to insure a fair election and a proper count of the votes.

The allegations of the bill are not sufficient to charge a conspiracy on the part of the sheriff and his deputies to violate the primary election laws. The allegations seeking to restrain the sheriff and his deputies are too general and indefinite and involve matters over which they have no control. For this reason they are not within the rule announced herein warranting injunctive relief. The allegations seeking to enjoin the inspectors are not specific as to wrongs sought to be concealed, they are indefinite and general, involve assumed and speculative violations not within the power of the inspectors to correct. For these and other reasons apparent on the record they cannot be redressed in a court of equity. They must be definite and specific and indicative of a right to relief over and above a mere political right and must show that no other adequate way of relief is open to the complainant. They will not be granted in response to an omnibus prayer.

The bill of complaint being insufficient for relief in a court of equity, it follows that the writ of prohibition absolute must be and is hereby granted.

Davis C.J., and Whitfield, Brown and Buford, J.J., concur.