BROWN, J., dissenting.
On the hearing it was properly made to appear that on 3 June, 1916, an election was held in Wake County, pursuant to chapter 101, Laws 1915, same being entitled "An act to provide for primary elections throughout the State" for the purpose of selecting, among others, the nominees of the Democratic Party as candidates for the lower House of the General Assembly; that Wake County is entitled to three members of the House of Representatives, and there were at said election six candidates for the Democratic nominees for these positions, and the vote for the candidates was as follows:
R.D. Winston, Jr., received ................ 2,609 votes J.E. Holding received ...................... 2,306 votes K.B. Johnston received ..................... 2,016 votes B.H. Pate received ......................... 1,924 votes B. Moore Parker received ................... 1,781 votes
That the returns having been duly made, the county board of elections of Wake County met on Monday, 5 June, 1916, and duly canvassed and tabulated the returns of said primary. That the canvass and tabulation of the vote of said primary was not completed until the morning of 6 June, when the said county board of elections filed a copy of said tabulated vote, accompanied with the affidavit of its chairman, as required by the provisions of the primary election law, with the clerk of the Superior Court of Wake County, retained one copy for its own use, and posted at the courthouse door in the said county of Wake a copy of said vote, attested by the chairman of the said board of elections. That the board of elections then adjourned sinedie. That no demand was made by the said B. H. Pate for a second primary until 15 June, 1916. That the said board of elections fully performed all the duties required of it by the said primary election law. That thereafter, on 15 June, and not before, B.H. Pate, who received the vote next highest to plaintiff, having been advised that there had been no nomination for the third place on the ticket for the alleged reason that no one had received a majority vote, as required by the statute, filed in writing his request for a second primary, and same was allowed, the county (165) board being advised thereto by the State Board of Elections; that since said 15 June, 1916, the defendant board has declined to recognize said K. B. Johnston, plaintiff, as one of the Democratic nominees for the House of Representatives.
On these the facts chiefly relevant to the question presented, the Court concurs in the view embodied in the judgment, that plaintiff is entitled *Page 214 
to the position claimed by him, and that the writ of mandamus lies to make such claim effective.
It is objected to the validity of his Honor's ruling that plaintiff may not be declared the nominee because it appears that he did not receive a "majority of the votes cast" as the primary as required by the statute."
It may be that the board, in adding up the entire vote for all the candidates and dividing the amount by the number of places to be filled, pursued the correct method for ascertaining the number of votes cast at such a primary, and that, so ascertained, the present plaintiff did not have a majority of such votes, within the meaning of the statute; but the position is not open to defendant on this record, because, in our opinion, and on the admitted facts, the plaintiff is the third nominee of the party, whether he received the majority or plurality of the votes cast, and this by reason of the fact this his only legal opponent did not demand a second primary within the time required by the law. On this question the portion of the act more directly pertinent is as follows:
"SEC. 24. That nominations for President and Vice President of the United States in the several congressional districts shall be determined by a plurality of the votes cast, and in the case of all other officers mentioned in this act nominations shall be determined by a majority of the votes cast. If in the case of an office other than the offices of President and Vice President no aspirant shall receive a majority of the votes cast, a second primary subject to the conditions hereinafter set out, shall be held, in which only the two aspirants who shall have received the highest and next highest number of votes shall be voted for: Provided, that if either of such two shall withdraw and decline to run, and shall file notice to that effect with the appropriate board of elections, such board shall declare the other aspirant nominated: Provided further, that unless the aspirant receiving the second highest number of votes shall, within five days after the result of such primary election shall have been officially declared, file in writing with the appropriate board of elections a request that a second primary be called and held, the aspirant receiving the highest number of votes cast shall be declared nominated by such appropriate board."
It is said to be an "elementary rule of construction that effect must be given, if possible, to every part of a statute," Lewis Sutherland on (166) Statutory Construction, sec. 380; and while it is true that this act, in the first portion of the section, requires a majority of the vote cast in order to the selection of the nominee, it enacts further, that if no aspirant shall receive such majority, a second primary may be had, but "subject to the conditions hereafter set out," to wit, that in the second primary only the highest and next highest shall be voted for, and provides that either one of these two may withdraw, filing notice to that *Page 215 
effect; and if neither withdraws, the one receiving the highest vote shall be declared the nominee unless the second highest shall demand in writing a second primary within five days after the result of the first primary shall have been officially declared.
On the record, the result of this primary was officially declared, at latest, on 6 June. The demand for a second primary was filed by contestant on 15 June, and not before, and by the express provision of the statute, therefore, the plaintiff was entitled to the position of nominee, and it became the duty of the election board to so declare.
It is no satisfactory or sufficient answer to this position that the county board did not, in formal terms, undertake to declare who were the nominees, nor does the statute in this aspect of the case make any such requirements. Section 21 1/2 of the act in effect provides that the county boards of election "shall tabulate the returns made by the judges and registrars of the several precincts of their respective counties so as to show the total number of votes cast for each candidate, etc., and when thus compiled on blanks, etc., and in reference to county officers these returns shall be made out in duplicate and one copy thereof shall be filed with the clerk of the Superior Court, one copy shall be retained with the board, which shall forthwith declare the results."
All this was properly done and the results posted by the board at the courthouse door; that is, the "results of the election, as shown by these returns, tabulated pursuant to law." This right to become a candidate arises from the vote, tabulated, declared, and published as required by the statute, and is not dependent on a formal declaration of such right by the board. There is no claim or suggestion that there was any irregularity in the election or any error in the returns by the precinct officers or in the tabulation of the vote by the board.
R. W. Winston, Jr., having received a clear majority of all the votes cast, was one of the nominees and entitled to go on the ticket. J.E. Holding, also, having a majority, had the same right; and plaintiff, if his votes, as shown by the returns officially tabulated, constituted a majority, would have had the same right; but if, as contended by defendant, it was only a plurality, the law clothed him with an additional right: he was still the nominee unless the next highest opponent should in writing demand a second primary in five days. This he did not do, and plaintiff, under the express provision of the statute, (167) thereby became as of right the lawful nominee for the third place.
In recognition of the fact that if a second primary is to be ordered much time may be required not only for holding the election, but for investigating irregularities that may occur therein, this provision for prompt notice becomes of the substance, and should be given substantial effect in passing upon the rights of the parties under law. *Page 216 
It is also contended for defendant that the courts may not control the action of political parties in reference to the selection of their candidates nor undertake to determine controversies concerning them, but will leave such questions to the agencies and bodies which they themselves have established for the purpose.
While this has, no doubt, been heretofore recognized as the sound rule, it does not prevail when, as in this case, the Legislature, in the exercise of its acknowledged powers, has taken control of the subject and enacted a statute conferring on successful contestants in a legalized primary certain specified and clearly defined legal rights, and enjoined upon an official board ministerial duties reasonably designed to make these rights effective. In such case, where the rights, as stated, are manifest and the duties clearly ministerial, the action of these boards becomes the subject of judicial scrutiny and control, and, on authority, the writ of mandamus
is the remedy by which relief may in proper instances be obtained.McCullers v. Comrs., 158 N.C. 75; Edgerton v. Kirby, 156 N.C. 347; Kitchinv. Wood, 154 N.C. 565; Board of Education v. Board of Comrs., 150 N.C. at page 121, citing Moses on Mandamus, p. 68.
In this connection it is further insisted that mandamus will not lie in the present instance, because the case is in effect a contest involving the title to an office, and the rights of the parties thereto can only be tried by action in the nature of quo warranto, citing Rhodes v. Love,153 N.C. 468; Ellison v. Raleigh, 89 N.C. 125, and other cases.
If it be conceded, as suggested, that this controversy is in effect a contest over an office, the principle recognized in these cases does not apply except where a defendant is in the present possession of the office and under some color of right.
The very term, quo warranto, signifies that the office is presently filled by an incumbent de jure or de facto, and the cases cited by defendant recognize the position that when the office is vacant or an incumbent is in without color or pretense of it, mandamus lies in favor of the rightful claimant, and authority elsewhere is to like effect. S. exrel. Moore v. Archibald, 5 N.D. 539; People ex rel. Brewster v. Kildreff,15 Ill. 769. And if the second primary has been held, as suggested, though it does not appear in the record, and defendant Pate selected, the plaintiff not participating therein, the result is the same, for the right of (168) plaintiff being complete by reason of the failure of his adversary to give the notice required by the statute, the order for the second primary is absolutely void, and affords no color to said defendant.
The other authorities cited and relied upon by counsel will be found to apply in cases, as stated, where the action complained of was that of political parties through their own agencies and unaffected by statute, or they referred to discretionary as distinguished from ministerial *Page 217 
duties, or where the questions chiefly considered were as to the regularity of the election itself and the results of same, as indicated by the votes cast — questions which are usually and in large measure referred by the statute to the decision of the election boards, as in section 26 of the present act; but these decisions have no application to the facts of the present record, where, as heretofore stated, the election board having done all that it was required or permitted to do, in the way of ascertaining and declaring the result of the election, it appears that the right of the plaintiff to the position is clear, and the performance of the duty sought is the ministerial one of placing his name on the general ticket, the only method of making his right effective. 19 A. and E. Enc. (2 Ed.), pp. 745-746.
The fact that the defendant board acted under advice of the State Board of Elections in the matter is without controlling significance. It was only given in courteous response to a request for it by the local board, and was not and was not claimed to be authoritative.
There is no error, and the judgment of the Superior Court is
Affirmed.