The action was to set aside the results of a legalized primary for Gates County and restrain the defendants, the County Board of Elections, from tabulating and publishing the results of same, in so far as it affected the selection of the Democratic candidate for sheriff; plaintiff, one of the contestants for the nomination, claiming that on the returns as certified by the poll-holders, his opponent, one C. M. Lawrence, was selected as the nominee, and that this result was brought about chiefly because the registrar and judges of election at several of the voting precincts had wrongfully and willfully refused to receive the votes of a good number of qualified voters, and whose purpose was to vote for plaintiff as the Democratic nominee. *Page 64 
The nature of plaintiff's claim for relief is set forth in his verified complaint, as follows: "That if the Election Board of Gates County are permitted to tabulate and publish said ballots as returned by the registrars and poll-holders of the various townships and declare the said C. M. Lawrence is the nominee of the primary for sheriff under the existing facts and conditions, the injury to this plaintiff will be irreparable, and he is without remedy, save in a court of equity." The prayer for judgment being that the primary election for the irregularities and errors herein set out be declared null and void, and for such other relief as the court may deem just.
On the hearing there was judgment that the restraining order be dissolved, that the results of the primary be forthwith tabulated and declared pursuant to the statute, and the costs taxed against plaintiff.
From which said judgment plaintiff, having duly excepted, appealed.
Chapter 101, Laws 1915, purports to provide for a legalized primary, by which the recognized political parties of the State may select their candidates by choice of the bona fide party voters.
In section 31 the statute is made to apply to any and all political parties who had candidates for State offices at the general election of 1914, and, in addition, any other political party described as such in a declaration signed by 10,000 legal voters of the State and filed with the State Board of Elections thirty days before the time fixed for State officers to file notices of their candidacy. And a qualified voter at such primary is said to be one who is a qualified voter of the State or who will become one on or before the next general election, and who has "declared and had recorded on the registration book (in a column provided for the purpose) that he affiliates with the political party in whose primary he proposes to vote, and is in good faith a member thereof, meaning that he intends to affiliate with the political party in whose primary he proposes to vote, and is in good faith a member thereof." Statute, secs. 5 and 11.
Provision is also made, both in the general law of elections, made a part of the act when not inconsistent with the terms of same, and in the statute itself, that the qualifications of any elector proposing to vote, and his good faith as to his declared intent to affiliate with the party, may be challenged, and it is made the duty of the registrars and judges of the election to determine whether or not the elector has a right to vote in the primary. Statute, secs. 3 and 11. *Page 65 
In the present case it appears from the allegations of plaintiff's complaint that on 1 June of the present year the primary was duly entered upon, in which the plaintiff and C. M. Lawrence were opposing candidates for sheriff; that the registrars and judges of election for the various precincts were duly appointed for the proper holding of said primary; that, having duly qualified, the votes were deposited in the various boxes under the supervision and according to the rulings of these officials; that at the close of the election, the votes having been correctly tabulated were duly certified to the county board of elections, etc., and that if the county board is permitted to tabulate and compile said returns, as the law requires, it will show that plaintiff's opponent, C. M. Lawrence, has received the nomination.
On these averments, admitted by the defendants to be true, it is proposed by plaintiff to stay further action by the county board and declare the primary void on the affidavits of certain applicants, 65 or 70 in number, that they attended the primary for the purpose of voting for plaintiff and "offering to affiliate with the Democratic party by voting for its candidates in the primary, and by voting for its nominees at the next general election, and they were wrongfully, willfully, and knowingly denied the privilege of voting by the registrar and judges conducting the primary."
If we were permitted to enter on the investigation contemplated in the present action, the relief sought by plaintiff could not be awarded, for the reason that his allegations of fact are not sufficiently sustained. In several of the precincts where the larger proportion of the illegalities are said to have occurred, there are affidavits of the registrar and at least one of the judges and others that no applicant was refused the right to vote, except when on being questioned, as provided by the statute, it appeared that they were not members of the Democratic party and did not in good faith intend to affiliate with such party. Apart from this, there is no allegation nor claim that these rejected applicants had caused their purpose to affiliate with the Democratic party to be written on the registration books as the statute requires (sections 5 and 11), nor that they had been denied the right to do so by the primary officials or others. Nor does it anywhere definitely appear that the reception of the votes in controversy would have changed the result as disclosed by the returns.DeBerry v. Nicholson, 102 N.C. 465.
But we are of opinion that the inquiry suggested by these pleadings and the evidence is not open to the courts, nor have they any jurisdiction to pursue or determine it.
It is the recognized position in this country that courts of equity or courts in the exercise of general equitable principles have no power to interfere with political parties in the choice of their candidates nor to *Page 66 
regulate or control the methods and agencies by which they are selected. Time out of mind, courts, in the exercise of these principles, have been restricted to the administration and adjustment of property as distinguished from political rights, and the well-considered authorities on the subject are to the effect that, in the absence of express statutory provision, neither courts of law or equity have jurisdiction in causes of the latter character except by appropriate legal remedies to enforce the performance of plainly ministerial duties or the protection of clearly defined legal rights existent and conferred usually by the Constitution and legislation applicable to the subject. Britt v. Canvassing Board,172 N.C. 797; In re Sawyer, 124 U.S. 200; Hunt v. Hoffman,125 Minn. 249; U.S. Voting Machine Co. v. Hobson, 132 Iowa 38; Shoemakerv. City of Des Moines, 129 Iowa 244; Walls v. Brundidge, 109 Ark. 250;Fletcher v. Tuttle, 151 Ill. 41; City of Dallas v. StreetRy., 105 Tex. 337[105 Tex. 337]; Greenev. Mills, 69 Fed., 852.
As said by Associate Justice Phillips in City of Dallas v. Street Ry.,supra, "Elections belong to the political branch of the government, and the general rule is that they are beyond the control of judicial power." And it may be added that the free and untrammelled exercise of these political rights, being the very base and buttress of popular government, even express legislation on the subject should be so drawn that the constitutional right of the citizen to vote for the candidate of his choice should always be most carefully safeguarded.
This being in our view the correct position, plaintiff's right to relief must depend upon the proper construction of the primary law, and on perusal of its provisions, it is clear, we think, that the Legislature did not and did not intend to vest the courts with power to enter on an investigation of this character, but has referred the question chiefly involved, the right of an applicant to vote in the primary, to the decision of the election boards at the various precincts. Under the statute, the right so to vote has been made to depend not only on the applicant's status as a legal voter, but on the good faith of his intent to affiliate with the party holding the primary, and, having provided for the selection of the registrar and judges, that they act under the sanction of an official oath, made them indictable for willful neglect or failure to perform their duties properly; and, further, that at the request of the chairman of any political party, the local board shall select some elector of that party to attend and witness the conduct of the primary as an additional guarantee of fair play, the Legislature may have concluded that these local boards were the best tribunal that could be devised to determine the qualifications of a proposed voter. And it may have considered, too, that, in the effort to obtain the general sense of party voters as to a candidate through a legalized primary, it was entirely *Page 67 
impracticable under any court procedure now existent to enter on an extended investigation of this nature involving disputed questions of law and fact with the constitutional right of appeal and have the same ended so as to ascertain and announce the rightful candidate in time for the general election.
Whatever may have been the reason moving to this enactment, the statute in express terms provides (section 11) that whenever the right of a proposed elector to vote is challenged on the ground that he does not affiliate with such party or does not in good faith intend to support the candidates nominated, it shall be the duties of the registrar and judges of election to determine whether or not the elector has a right to vote; and, having so provided and conferred no power on the court to supervise or control their action and in the phase as now presented, this being an indeterminate political right, the decision of the local board must be considered as final in so far as its effect upon the result of the primary is concerned, and it has therefore been properly adjudged that plaintiff is not entitled to any relief within the scope and purpose of his present suit.
The ballots having been deposited in boxes prepared for the purpose, under the supervision and rulings of the registrar and judges at the different voting precincts, the law requires these officials at the close of the primary to count the same and certify a correct return of the vote to the county and State boards of elections, respectively, this according to the nature of the offices, and these boards are directed to tabulate and publish the results, which results when published shall ascertain and determine the regular party candidate. The only provision of the law which authorizes or permits an examination or correction of these returns appears in section 27 of the act as follows:
"That when, on account of errors in tabulating returns and filling out blanks, the result of an election in any one or more precincts cannot be accurately known, the county board of elections and the State board of elections shall be allowed access to the ballot boxes in such precincts to make a recount and declare the results, which shall be done under such rules as the State board of elections shall establish to protect the integrity of the election and the rights of the voters."
A power, it will be noted, that arises to these boards only "when, on account of errors in tabulating returns or filling out blanks," the result of the election cannot be accurately known, and confers no authority on the courts, assuredly, to investigate and pass upon the methods or manner in which the primary may have been conducted.
The suggestion that the act incorporates certain provisions of the general election law which might affect the interpretation is without significance, for in all cases where this occurs the statute itself contains *Page 68 
provision that the reference shall only prevail when not inconsistent with the terms of the primary law, the controlling provisions of which are as heretofore shown. In support of the right to maintain his action, we were cited by plaintiff to Johnston v. Board of Elections, 172 N.C. 162, but the case does not support his position. In that case, the primary having been conducted pursuant to law and the result declared, showing that plaintiff Johnston was entitled to the nomination, the court entertained an application for a writ of mandamus compelling the election board to place the name of plaintiff upon the party ticket, this being a clearly defined legal right expressly conferred by statute, and the writ being the appropriate common-law remedy available in such cases.
Speaking to the question in Johnston's case, the Court said: "While ordinarily courts may control political parties in the selection of their candidates for office, this principle does not apply where the Legislature, in the exercise of its powers, has taken control of the subject and enacted a statute conferring on successful contestants in a legalized primary certain specified and clearly defined legal rights and enjoined upon an official board ministerial duties reasonably designed to make these rights effective."
This decision is in clear illustration of the principle heretofore stated and approved, that while the courts, by appropriate common-law remedies, may interpose for the purpose of enforcing plainly ministerial duties or to protect clearly defined legal rights, it may not, without express legislative provision, resort to general equitable principles involving an interference with recognized political rights and methods by which the candidates of the different political parties are chosen.
On the record, plaintiff is not entitled to relief, and the judgment to that effect is
Affirmed.