P. E. ROWLAND v. BOARD OF ELECTIONS OF VANCE COUNTY ET AL.

(Filed 20 September, 1922.)

**1. Elections—Primary Law—County Board—Powers of Review—Qualification of Electors—Returns.**

Under our primary law the right of a proposed elector to vote for the party's choice of a county official, in this case a register of deeds, is expressly referred to the precinct registrar and judges of election, without power of review, or otherwise, in the county board of elections, the authority of the county board extending only to supervise or to review "errors in tabulating returns or filling out blanks." C. S., 6042, 6048.

**2. Same—Mandamus.**

Where the county board of elections has assumed to pass upon the qualifications of the electors voting in a primary for the selection of a party candidate for a county office, and in so doing has declared certain of the electors disqualified, and has accordingly changed its returns and declared the one appearing to have received a smaller vote, the choice of the party as a candidate, an action will lie by the one appearing to have received the larger vote, against the county board, to compel them, by *mandamus*, to tabulate the returns made by the registrars and judges of the precinct, and then to publish and declare the same as the result of the election. C. S., 6042, 6048.

**3. Elections—Primary Law—Statute—Legislative Powers—Courts.**

The courts will not determine the reasonableness of the legislative enactment differentiating the authority of the county board of elections in passing upon the qualification of the electors of a precinct in a primary selection of a candidate for a county office, from the powers to be exercised by it in a general election, this being a matter entirely within the province of legislation and not subject to judicial inquiry by the courts.

**4. Elections—Primary Law—Repealing Statutes.**

The primary law to select a party candidate for a county office repeals all laws inconsistent with its provisions, and by incorporating therein certain provisions of the general election law, confers no authority on the county board of electors to pass upon the qualifications of the voters of a precinct, and thereby change the result of the election from that appearing upon the face of the returns it had officially tabulated.

CLARK, C. J., dissenting.

APPEAL by defendants from *Kerr, J.,* at chambers, 24 August, 1922, from VANCE.

Civil action to require the defendant Board of Elections of Vance County, by writ of *mandamus,* to tabulate the returns made by the judges and registrars of the several precincts in a primary election held in said county on 1 July, 1922, and then to publish and declare the correct result of said primary election in regard to the nomination of a candidate of the Democratic Party, for the office of register of deeds of said county. The plaintiff duly set out in his petition that, on the face of said returns, he was entitled to be declared the nominee of his party as candidate for the office aforesaid. This was not denied by the defendants, but they contend that on account of certain irregularities occurring in said election, the plaintiff's opponent, Mrs. George T. Buchan, should be declared the rightful nominee.

From a judgment in favor of the plaintiff granting the writ of *mandamus* as prayed for, and defendants, having duly excepted, appealed.

*J. P. Zollicoffer, A. A. Bunn, and J. M. Peace for plaintiff.*
*T. M. Pittman, Andrew J. Harris, Perry & Kittrell, and Jasper B. Hicks for defendants.*

STACY, J. On the hearing it was properly made to appear that on 3 June, 1922, an election was held in Vance County, pursuant to article 17, chapter 97, of the Consolidated Statutes, for the purpose of selecting, among others, a nominee of the Democratic Party as candidate for the office of register of deeds of said county. At this election the plaintiff, who, with others, had duly and regularly entered the primary, received a plurality, but not a majority of the votes cast in said contest. Whereupon, Mrs. George T. Buchan, who, as one of the contestants, had received the second highest number of votes for said nomination in the election, requested that a second primary be called and held as she was entitled to do under C. S., 6045. Pursuant to this request, and in accordance with the law pertaining to the subject, a second primary was duly called and held on 1 July, 1922. In this election, according to the returns made by the judges and registrars of the several precincts to the county board of elections, the plaintiff received 1,136 votes, and Mrs. George T. Buchan, his opponent, received 1,134 votes. Upon these returns the plaintiff contends that he is entitled to be declared the nominee of his party as candidate for the office of register of deeds of Vance County, and he brings this action to compel the defendant board of elections to make such publication and declaration, alleging that it is in duty bound so to do under C. S., 6042.

On 3 July, 1922, when the defendant board of elections met in Henderson for the purpose of receiving and tabulating the returns from the several voting precincts of the county, Mrs. George T. Buchan, through her counsel, appeared before said board and asked that she be given an opportunity or time to present affidavits and other evidence tending to show certain irregularities, prejudicial to her and affecting the result of said election adversely to her nomination. The board granted this request, over the objection of the plaintiff, and took a recess or adjournment to meet again on Saturday, 8 July. At this meeting Mrs. Buchan presented the charge and complaint, supported by affidavits, that five illegal votes had been cast for the plaintiff in said election. The ground of said charge or complaint chiefly being that the electors in question did not, and did not intend to, affiliate with the Democratic Party. Upon this showing, she asked that these votes be eliminated from the count, and that she be declared the rightful nominee by a majority of 3 votes. The plaintiff, through his counsel, demurred to this proceeding, and demanded that the result be declared according to the official returns. A further adjournment was taken until 11 July, 1922, at which time the defendant board of elections, being of opinion that it had the power and authority to pass upon the legality of these alleged illegal ballots, proceeded to hear evidence tending to show the disqualification of five electors who voted in the election, and, upon the evidence presented, the

said board concluded that the true and correct returns in this second primary should have been 1,134 votes for Mrs. Buchan and 1,131 votes for the plaintiff. The defendant board of elections thereupon undertook to change the returns to the extent indicated, and to declare Mrs. Buchan the nominee of her party as candidate for the office of register of deeds for Vance County.

The illegality of the five votes, which were in question before the county board of elections, is not admitted by the plaintiff, but he is here in this proceeding denying and challenging the power and authority of the defendant board to hear and to determine any such controversy. This is the only question before us for decision.

Clearly, if said board has exceeded its authority, the plaintiff is entitled to the relief sought. Such was the effect of our holding in *Johnston v. Board of Elections,* 172 N. C., 162. From a perusal of the statutes on the subject, we think it is manifest that the county boards of elections have been vested with ministerial or administrative powers only, which consist of tabulating the returns in primary elections and forwarding same to the State Board of Elections, in instances where such is required, and, in case of nominations for county offices, forthwith in publishing and declaring the results, C. S., 6042. These returns may not be altered or changed by the county boards of elections unless there has been some error in addition or in filling out the blanks on the part of the judges and registrars in one or more of the several precincts, in which event they "shall be allowed access to the ballot boxes in such precincts to make a recount and declare the results." C. S., 6048.

With respect to the wisdom or impolicy of giving the county boards of elections the same power over the returns in primary elections as they have over the returns in a general election, we are not called upon to decide or to express any opinion. This is a question of policy which the Legislature alone may consider. Suffice it for us to say that, as the law is now written, no such power is vested in the county boards of elections in regard to the returns made by the judges and registrars of the several precincts in a primary election. On the contrary, such powers and duties appear to have been purposely withheld from said boards, and this evidently for reasons which seem to partake of the better part of wisdom. Finality in these matters must reside somewhere, and, under the primary law, by the express terms of the statute, the duty of passing upon the qualifications of those offering to vote in a given election has been vested in the local registrars and judges of election. C. S., 6031. No power of review, or other judicial authority, in primary elections, has been lodged in the county boards of elections.

This question was discussed by *Hoke, J.,* in *Brown v. Costen,* 176 N. C., 66, from which we quote with slight variations to fit the par-

ticular facts in hand. The Legislature did not, and did not intend to, vest the county boards of elections with power to enter upon an investigation of this character, but has referred the question chiefly involved, the right of an applicant to vote in the primary, to the decision of the election boards at the various precincts. The right to vote in a primary election, under express statutory provision, has been made to depend not only upon the applicant's status as a legal voter, but also upon his bona fide intent to affiliate with the party holding the primary. The law provides for the appointment of a registrar and judges of election in each precinct, who are required to act under the sanction of an official oath, and they may be indicted for willful neglect or failure to perform their duties properly. Also, at the request of the chairman of any political party, provision is made for the selection of some elector of that party to attend and to witness the conduct of the primary as an additional guarantee of fair play.

After a careful consideration and full debate of the question, the Legislature may have concluded that these local boards, or poll-holders, constitute the best tribunal that could be devised for determining the qualifications of a proposed voter. It may have considered, too, that, in an effort to ascertain the general expression of party electors in a legalized primary, it was well-nigh impracticable to enter upon an extended investigation of this kind before the county boards of elections, or any other tribunal, and have the same determined satisfactorily and in time to announce the rightful candidate before the general election. Of course, if a small number of votes may be challenged, then all may be challenged and the whole election may be called in question.

But whatever considerations may have brought about the exact provisions of the primary law, it is stipulated in express terms (C. S., 6031) that, when the right of a proposed elector to vote in the primary of any party is challenged upon the ground that he does not affiliate with such party, or does not in good faith intend to support the candidates nominated in said primary, his qualification and right to vote shall be referred for determination to the precinct registrar and judges of election.

Thus, the matter having been committed to these local or precinct boards, and no power being conferred on the county boards of elections to supervise or to review their findings, except in case of "errors in tabulating returns or filling out blanks," we must hold that the action of the defendant county board of elections in the instant case in undertaking to change the returns was without warrant of law, and that the plaintiff is entitled to have the same tabulated and the result forthwith published and declared. *Moore v. Jones,* 76 N. C., 182.

The suggestion that certain provisions of the general election law have been incorporated in and made a part of the primary law, giving the county boards of elections larger powers than above indicated, is without material significance on the present record, for, in those cases where this occurs, it is provided that such references shall have effect only when not inconsistent with the terms of the primary law itself. "Unless otherwise provided herein" is the language of the statute. The above provisions are clear and unambiguous; they have but little ground for construction or interpretation.

On the record, plaintiff is entitled to the relief sought, and hence the judgment must be upheld.

Affirmed.

CLARK, C. J., dissenting: Originally the county commissioners constituted the returning board of elections, and were only authorized to "proceed to add the number of votes returned, the person having the greatest number of votes being the one elected." B. R., ch. 52, sec. 21. On this it was held that "to add the number of votes returned" is a ministerial act. This statute is so plain that he who runs may read. *Moore v. Jones,* 76 N. C., 186.

Later it was enacted that county canvassers shall open and canvass and *judicially determine* the returns and make abstracts, etc. The Code, sec. 2649. The person having the greatest number of legal votes for any office to be declared elected. *Ibid.,* sec. 2699. This was held to give authority to determine the authenticity of the returns themselves, but not to pass upon the qualifications of voters. *Peebles v. Comrs.,* 82 N. C., 385.

It was then enacted, Laws 1901, ch. 89, sec. 33, now C. S., 5986, that "the board of county canvassers shall have power and authority to *judicially* pass upon all facts relative to the election, and judicially determine and declare results of the same, and they shall also have power and authority to send for papers and persons and examine the same."

These progressive steps mark a steadily advancing public policy, looking to an authoritative and controlling supervision of elections, both general and primary.

It will be noted that registrars and judges of election are not given judicial powers, except to "maintain order and to enforce obedience to their lawful commands during their sessions," for which purpose only they are constituted inferior courts. C. S., 5977.

Section 5986 has not received judicial interpretation, nor has sections 6020 or 6047 as correlating the boards of canvassers had direct consideration from this Court. There is, however, recognition of the enlarged scope of their powers, by *Hoke, J.,* speaking for the Court:

"If a second primary is to be ordered, much time may be required not only for holding the election, but for *investigating the irregularities that may occur therein."* Johnston v. Board of Elections, 172 N. C., 167.

"This development of public policy along the line of supervision and control indicates a distinct purpose to provide relief from irregularities and illegalities through regular election agencies."

In Battle's Revisal, *supra,* the duty was limited to adding the figures and announcing their sum. In The Code the function was enlarged to a judicial determination of the returns.

In C. S., 5986, the power and authority of the county board are broadened to *judicially* pass upon *all facts* relative to the election, not merely the returns, *and* to *judicially* determine and declare the results of the same. So that what the court below has held to be the whole duty of the board is stated by the Legislature to be in addition to the larger duty of passing upon "all facts" relative to the election, and there is the still further judicial function of sending for "papers and persons" and "examining the same."

It is contended by the defendant board of elections that under C. S., 6020, entitled "Primary Governed by General Election Laws," that this revisal of the precinct returns by the county board applies to primaries as well as to the election itself.

The General Assembly seems to have thought that it would be better if the county board should have the same control in judicially determining the result in a county, in a primary as well as in the election itself, for the title of section 6020, "Primary Governed by General Election Laws," would seem to indicate as much, and the section itself reads as follows: "Unless otherwise provided in this article, such primary elections shall be conducted, as far as practicable, in all things and in all details in accordance with the general election laws of this State, and all the provisions of this chapter and of other laws governing elections not inconsistent with this article shall apply as fully to such primary elections and the acts and things done thereunder as to general elections; and all acts made criminal if committed in connection with a general election shall likewise be criminal, with the same punishment, when committed in a primary election held hereunder." The general election laws apply when not inconsistent, *Brown v. Costen,* 176 N. C., 63.

It seems reasonable that the statute, section 6020, should direct that the action of the precinct officers, who have no judicial function, should be passed upon by the county board of elections, which is vested with such authority, for in many counties the primary determines the result of the election.

After an election, the courts are vested with the judicial power upon a *quo warranto* to pass upon the result except as to members of the Legis-

lature. But this not being statutory, the courts have no power to go behind the returns of the election board in a primary, and the action of the court in this case was therefore without authority of law. If the Superior Court had any jurisdiction over this board, the power is confined to ordering its members to reassemble and exercise its powers according to law. The court had no power to say what the judgment of the board of elections should be. Its jurisdiction is limited to requiring the board to complete its labors and perform purely ministerial acts. *Johnston v. Board,* 172 N. C., 162; *Britt v. Board, ibid.,* 807.

Certainly the court was without jurisdiction to compel the board of elections to reverse their findings and declare a specific person the candidate of the Democratic Party where the right to nomination is in open controversy. This is fully discussed in *Britt v. Board, supra,* where the Court, citing Topping on Mandamus, holds "that in no case does the writ lie to compel a tribunal, judicial or administrative, to render any particular judgment or decision, or to set aside one already rendered, but only to enforce the performance of a ministerial or mandatory duty," citing *U. S. v. Seaman,* 17 How. (U. S.), 225; *Gaines v. Thompson,* 7 Wallace, 347.

The pleadings in this case show that the board of elections refused to count three Republican votes, the illegality of which was not denied at a full hearing, at which both claimants of the nomination were present, after due notice, and represented by counsel. These illegal votes were sufficient to change the result of the primary, and the board of elections held that such illegal votes should not be allowed to determine the results of a Democratic primary.

The county board of elections is authorized expressly by C. S., 5986, to "judicially pass upon all facts relative to the election, and to judicially determine and declare the result of the same," and the board of elections of Vance was vested with the same power as to primary elections by C. S., 6020. They have done this, and declared Mrs. George T. Buchan the Democratic nominee for register of deeds, the court was without any authority to examine into the action of the board or direct them, as in this case, to declare another person the nominee of the Democratic Party in the primary.

C. S., 6020, having thus given to the county election board the power and duty of revising and judicially determining the result of the precinct returns no statute authorizes the courts to go behind the decision of the county board. The law seems to be correctly summed up in the second head-note to *Brown v. Costen,* 176 N. C., 63, as follows: "Under the provisions of our primary law (Laws 1915, ch. 101), the right of a voter to cast his ballot therein depends not only upon his legal status, but upon the good faith of his intent to affiliate with the party holding

the primary, and his right in the latter respect is left to the determination of the registrar and judges of election, without power vested in the courts to supervise or control their action; and, this being an indeterminate political right, the decision of the county board must be considered final, so far as the courts are concerned, when the primary has been held in all respects in accordance with the provisions of the statute."

The action of the board of elections in declaring the nominee of the party is not subject to review by the courts, but is only subject to the vote of the people at the ballot box. In my judgment, therefore, the action of the court was without authority, and should be reversed, and the decision of the board of elections should be held a finality.