J. C. SHOEMAKER, Appellant, v. CITY OF DES MOINES, et al., Appellees.

**Injunction:** POLITICAL RIGHTS. Equity will not interfere to protect 1 a purely political right.

**Voting machines:** CONTRACT OF PURCHASE: INJUNCTION. A tax- 2 payer cannot restrain the performance of a contract by public officers for the purchase of voting machines on the ground that they are inefficient, where the contract provides that there shall be no liability therefor until every element of doubt as to efficiency has been removed.

*Appeal from Polk District Court.*— HON. HUGH BRENNAN, Judge.

TUESDAY, JANUARY 9, 1906.

It appears that in June, 1904, the city of Des Moines, this state, entered into a contract in writing with the Universal Voting Machine Company, of Bloomington, Ill., in which it was provided that said company " has this day sold and agreed to deliver on board cars at Bloomington, to said second party [the city] 15 voting machines of the model known as the ' Universal Voting Machine.' " The contract then provides that the city shall pay for said machines the sum of $7,500, in 10 annual installments, the first to be due and payable as the use of said machines in the conduct of elections in the state of Iowa shall have been declared legal by a court of competent jurisdiction. The further agreement follows that no liability under said contract shall exist on the part of the city until the use of such machines in the conduct of elections in this state shall have

been declared legal by a court of competent jurisdiction, and that, in the event that the use of said machines shall ultimately be declared illegal by a court of last resort, then the contract shall be void, and the city shall return all machines delivered, and the company shall refund all moneys paid.

By a further provision the company agrees to hold the city harmless from all loss or damage, including the cost of special elections, if necessary, and costs of litigation which may arise from the use of said machines, and in the event such use shall subsequently be held by the courts of this state to be illegal or the election invalid because of the use thereof. Further, the contract requires the company to execute a bond in the sum of $5,000 for the faithful performance on its part of any and all conditions of the contract. The contract contains the condition that it shall be valid only in case of the purchase by the county of Polk of a like number of machines.

On the same date a contract was entered into between said company and Polk county; the number of the voting machines agreed to be purchased being thirty-six. The terms of payment as to time and amount are somewhat different from those agreed upon in the contract with the city, and the bond agreed to be given by the company is in the sum of $10,000. In all other material respects the contract appears to be identical with the city contract. This action is brought against the city and county by plaintiff, a voter and taxpayer, to restrain the carrying of such contracts into execution. The case coming before the court below on application for a temporary writ, it was stipulated that the hearing had should be upon the merits, and to be regarded as final. The trial resulted in a decree in favor of the defendants, and the plaintiff appeals.— *Affirmed.*

*J. K. Macomber* and *Read & Read,* for appellants

*Halloran & Starkey* and *Myerly & Myerly,* for appellees.

BISHOP, J.— By chapter 37, page 19, Acts 28th General Assembly (Code Supp. 1902, title 6, chapter 3a), the use of voting machines at all state, county, city, town, and township elections was authorized; and by the act boards of supervisors and councils of cities and incorporated towns were empowered to purchase and order the use of voting machines at all such elections. A commission to consist of three persons, to be appointed by the Governor, is provided for by the act, which shall examine all machines offered, and in respect thereto shall "make report to the Secretary of State upon the capacity of the said machine to register the will of voters, its accuracy and efficiency, and with respect to its mechanical perfections and imperfections. Their report shall be filed in the office of the Secretary of State and shall state whether in their opinion the kind of machine so examined can be safely used by such voters at elections under the conditions prescribed by this act. If the report states that the machine can be so used, it shall be deemed approved by the commissioners, and machines of its kind may be adopted for use at elections as herein provided." There is then set forth in the act provisions as to the construction of the machine which may be approved, thus: "A voting machine approved by the state board  .  .  . must be so constructed as to provide facilities for voting for the candidates of at least seven different parties, must permit a voter to vote for any person for any office although not nominated as a candidate by any party, and must permit voting in absolute secrecy," etc.

It is conceded that a board of commissioners was regularly appointed and qualified under said act; further, that prior to the contracts in question the board was called upon to and did examine the "Universal Voting Machine," and

approved thereof in all respects, which report was duly filed in the office of the Secretary of State.

As already stated, the plaintiff brings this action in his capacity as a voter and as a taxpayer of the city and county, and he alleges that the action is on behalf of all other voters and taxpayers who may desire to join him therein.   The matters of contention as presented by him all have relation to the mechanical construction of the machine in question, and the adaptability thereof to the required purposes of a voting machine.   And it seems to be the theory of the action that because of alleged faults and imperfections in the machine plaintiff, as a voter, will be deprived of the right to cast his ballot as he may desire, and to have the same counted as intended to be cast, and that as a taxpayer he will suffer loss and damage, in that he will be compelled to contribute to the payment of such alleged imperfect machines, and other expenditures incident to the attempted use thereof.

Aside from the records introduced, all of the evidence taken upon the trial was that of two witnesses claiming to be voting machine experts, one an employé of the Universal Company, and the other an employé of a rival machine company.   As might be expected, they are hopelessly in·conflict in respect of many points, and, in the view we take of the case, it is wholly unnecessary for us to sift the evidence out and attempt to reach a conclusion as to the merits of the various points thus made the subject of controversy.   To again recur thereto, it will be remembered that plaintiff claims no rights, except as a voter and a taxpayer.   If, therefore, he is entitled to any relief at the hands of a court of equity, it must be because the threatened invasion of such matters of right, one or both, are properly cognizable in equity, and, this being established, that substantial grounds to apprehend irreparable injury have been made to appear.

The contention of plaintiff predicated upon his capac-

ity as a voter may be disposed of in a word. The right to vote at any election is a political right pure and simple;

1. INJUNCTION: political rights. · and equity does not interfere to protect or enforce political rights which are unconnected with any individual or property rights. Upon this all the authorities are agreed. Kerr on Injunctions (Hewitt) 8; 11 Am. & Eng. Ency. 191; *State v. Stanton,* 6 Wall. 50, (18 L. Ed. 721; *In re Sawyer,* 124 U. S. 200, (8 Sup. Ct. 482, 31 L. Ed. 402); *Muhler v. Hedekin,* 119 Ind. 481, (20 N. E. Rep. 700); *Taylor v. Kercheval* (C. C.) 82 Fed. 497. The rights of plaintiff as a taxpayer may find recognition in a court of equity, of course. It is well settled that a taxpayer may maintain an action either to restrain an unlawful disposition of the public moneys or to prevent the incurring of an unauthorized indebtedness intended to be paid out of public funds. *Snyder v. Foster,* 77 Iowa, 638; *Brockman v. City of Creston,* 79 Iowa, 587. But, while this is true, it is also true that a taxpayer cannot by injunction restrain public officers in the performance of their duties, even though irregular, where it does not appear their action is such as to be prejudicial to him. *Sperry v. Kretchner,* 65 Iowa, 525.

. What, then, is to be said of the instant contracts, and in what way is it possible for a taxpayer to be prejudiced by carrying the same into effect? In view of what is writ-

2. VOTING MACHINES: contract of purchase: injunction. ten in the statute book, it must be conceded that the city and county had the right to buy voting machines, and, necessarily, to provide for the payment therefor from the public revenues. So far, no taxpayer could be heard to complain. That they had the right to buy the machines in question cannot be doubted in view of the approval thereof by the commissioners, and their report to the Secretary of State. Now, conceding, as we may, that the adaptibility and efficiency of the machines is open to doubt, even gravest doubt, still by the terms of the contract there is no liability on the part of city or county,

and hence on the part of individual taxpayers, until every element of doubt has been solved in favor of the utility of the machine. This result is to be reached through the medium of the courts, after a practical test has been made. If, upon such test being made, and the subject-matter being brought before the courts, it shall appear that the apprehension now entertained by plaintiff is well grounded, the city and county are not only to be relieved from necessity for making payment, but they are to be reimbursed for all expense and damage. And, in addition to the conceded solvency of the machine company, the bonds given may be resorted to and the indemnity made certain. To sum up in a word, plaintiff cannot claim injury because he may be called upon to pay for machines adapted to the purpose. He cannot be injured, if, forsooth, the instant machines prove imperfect, and hence worthless, taking the requirements of the law as the standard, because under such conditions no liability can arise. There is, then, no ground upon which at this time the jurisdiction of a court of equity can be invoked; and it follows that the court below rightly entered a decree dismissing the petition.

  *Affirmed.*