**McALISTER, Sec. of State Election Board, et al. v. STATE ex rel. SHORT, Atty. Gen.**

No. 14696—Opinion Filed Sept. 27, 1923.

(Syllabus.)

1. **Constitutional Law—Powers of Legislature—Submission of Constitutional Amendments.**

Section 1, article 5, and section 1, article 24, Williams' Annotated Constitution, vests the legislative power of the state in the Legislature and the people. Section 1, article 24 gives the Legislature power to submit constitutional amendments.

2. **Same — Validity of Submission —Jurisdiction of Court of Equity.**

When the Legislature authorizes the submission of a proposed amendment to the

Constitution to the people, it merely places in motion the process of the people's exercising their reserved legislative power, and a court of equity will not assume in advance jurisdiction to determine whether the proposed amendment, if adopted, is submitted and adopted in accordance with the law governing the same.

Error from District Court, Oklahoma County; T. G. Chambers, Judge.

Action by the State, on the relation of George F. Short, Attorney General, against W. C. McAlister, Secretary of State Election Board, and others. Judgment for plaintiff, and defendants bring error. Reversed.

John H. Halley, W. L. Eagleton, Jr., R. C. Brown, and Margaret McVean, for plaintiffs in error.

George F. Short, Atty. Gen., and J. Berry King, Asst. Atty. Gen., for defendant in error.

BRANSON, J. This appeal is prosecuted from a judgment in injunction entered by the district court of Oklahoma county on the 18th day of September, 1923, enjoining and restraining, on the petition of the state, on the relation of George F. Short, Attorney General, W. C. McAlister, secretary of the State Election Board, Claude Baker, chairman of said election board, John P. Logan, member of the State Election Board, R. A. Sneed, Secretary of State, Ben Lafayette, chairman of the State Board of Affairs, Mrs. Patrick Nagle, and Louis LeFlore, members of the State Board of Affairs, from holding an election on the 2nd day of October, 1923.

The state, on the relation of the Attorney General, pleads in substance that the Governor, the Honorable J. C. Walton, issued his proclamation calling an election to be held on the 2nd day of October, 1923, throughout the state, for the purpose of submitting to the voters of the state certain amendments to the Constitution proposed by the Ninth Legislature. The proclamation of the Governor calling said election is set out as an exhibit to the petition, and recites the resolutions passed by the Senate and the House submitting certain constitutional provisions, which, as recited in the Governor's proclamation, are, in brief:

(1) Senate Joint Resolution No. 4, providing for compulsory compensation of employes and their dependents in case of death, or permanent or partial disability, the same proposing an amendment to section 7, article 23, of the Constitution, said resolution being found in chapter 249 of the Session Acts.

(2) A proposed amendment to section 3, article 6, of the Constitution, eliminating the word "male" from the qualifications of persons eligible to election or appointment to all offices, the said resolution proposing said amendment being found in chapter 250 of the Session Acts.

(3) An amendment to the Constitution relating to "Soldier Bonus" by adding to the Constitution article 26, entitled:

"A Constitutional Amendment to the Constitution of the State of Oklahoma, Said Article Authorizing and Providing for the Industrial Rehabilitation and Equalized Compensation or Farm or Home Aid to all Soldiers and Certain Dependents of Deceased Soldiers who Served Honorably, from the State of Oklahoma, in the War Between the United States and the German Empire and Its Allies, Prescribing Qualifications of Those Who Shall Receive Such Loan or Compensation and Creating a Commission to be Known as the 'Soldiers' State Aid Commission,' and Defining the Powers and Duties of said Commission, Authorizing the Issuance and Prescribing the Character and Amount of Bonds to be Issued, and Creating a Special Fund from the Proceeds Thereof to Carry out the Purpose of this Act, and Providing how Said Bonds Shall be Issued and sold, and Providing Ways and Means by Which the Interest on Said Bonds Shall be Paid When due, and the Bonds Themselves Paid at Maturity, same Being Chapter 267, Session Laws of Oakhoma, 1923."

(4) An amendment to the Constitution providing a special state levy for public schools, being an amendment to section 9 of article 10 of the Constitution, said amendment providing the total ad valorem taxes for state, county, township, city, etc.

(5) An amendment to the Constitution adding to article 14 a section to be known as section 4, said section providing that the Legislature shall provide for the payment of all lawful claims and judgments against the depositors' guaranty fund growing out of insolvent banks, etc.,

Which proclamation concludes:

"Now, therefore, in order to carry out the intent and purposes of the Legislature in the matter of submitting said proposed amendments to the Constitution above set out, I, J. C. Walton, Governor of the state of Oklahoma, by virtue of the authority in me vested, do hereby proclaim and call a special election to be held under the direction of the State Election Board of the State of Oklahoma, in each and every voting precinct in said state, wherein and whereat, by proper ballot title each of the above propositions and questions shall be submitted to the qualified electors of the state of Oklahoma for their approval or rejection; said election to be held on Tuesday the second day of October, in the year of our Lord, One Thousand Nine Hundred and Twenty-Three.

(Signed) J. C. Walton, Governor of the State of Oklahoma."

The said petition further pleading:"The Legislature, in violation of article 24, section 1, of the Constitution, did not by a two-thirds vote of each house order a special election to be held for the purpose of submitting said proposed amendments to the voters; that such attempt is void, and in violation of said article 24, section 1, of the Constitution"; and further·pleading: "The expense of holding the election throughout the state would work great injury to the plaintiff,·and that plaintiff has no adequate remedy at law."

Said petition was filed in the district court of Oklahoma county on September 17, 1923; the injunction prayed was entered the following day by the trial court, enjoining the holding of the election. The plaintiffs in error were represented on the trial of this cause by John H. Hally, W. L. Eagleton, Jr., and R. C. Brown, who appeared in behalf of the American Legion, and Margaret McVean, who appeared in behalf of the women of the state interested in the resolution and proposed constitutional amendment touching their qualifications to hold public office. The brief filed by the American Legion on behalf of plaintiffs in error was filed on September 26, 1923. The defendant in error in its brief recites:

"This suit was brought in the name of the state by the Attorney General upon the written request and direction of the Governor to test the validity of the submission of the amendments."

It will be noted that in the proclamation of the Governor calling the election (section 3, supra), a resolution was included passed by the Legislature in 1923, submitting a constitutional amendment to the people of the state on the payment of bonus to soldiers. On oral argument in this case, it was conceded by counsel who presented the cause for the defendant in error that the resolution providing for the soldier bonus amendment received that number of votes in each house required by the Constitution to submit the same to the people of the state at a special election, but contended that the said resolution is not in compliance with section 1 of article 24 of the Constitution of the state, which provides:

"Any amendment or amendments to this Constitution may be proposed in either branch of the Legislature, and if the same shall be agreed to by a majority of all the members elected to each of the two houses, such proposed amendment or amendments shall, with the yeas and nays thereon, be entered in their journals and referred by the Secretary of State to the people for their approval or rejection, at the next regular general election, except when the Legislature, by a two-thirds vote of· each house, shall order a special election for that purpose. If a majority of all the electors voting at such election shall vote in favor of any amendment thereto, it shall thereby become a part of this Constitution.

"If two or more amendments are proposed, they shall be submitted in such manner that electors may vote for or against them separately"

—in that it was the duty of the Legislature, if a special election was ordered under said quoted constitutional provision, to specify the day and date when the same should be held, and that the Legislature was without power to delegate this authority and duty to the discretion of the Governor, as was done in said resolution.

We deem it unnecessary to discuss the other resolutions submitted by the proclamation of the Governor, or the propriety of submitting the same at a special election, for the injunction is against holding the election as called, and does not extend to the holding of the election on any particular one of the proposed constitutional amendments. If the election can be properly held on either, the injunction should have been denied.

While the question raised by counsel for the defendant in error as to whether the proposed constitutional amendment for the soldiers' bonus was by the said resolution submitted in conformity with the constitutional provision governing the submission of amendments at special elections, presents a serious and debatable question, we do not feel it proper to determine the same in this proceeding.

The plaintiffs in error contend that the judgment of the trial court in this cause should be reversed, for the reason that equity will not assume jurisdiction to enjoin the holding of an election where the question involved is of a purely political nature. In the case of Lamb v. B. C. R. & M. R. Co., 39 Iowa, 333, the court said:

"And further than this, without undertaking to decide the question, we simply state that we should hesitate long before adjudging that any court has the power or jurisdiction to enjoin an election to be held by the people pursuant to a public law. * * * The jurisdiction of any court, or of the whole judicial department of the government, to enjoin the expression of the popular will at a time and in the manner provided by statute, may well be doubted. If the election,

when held, was not according to statute, or if the statute was enacted without any constitutional authority, the courts might very well hold the election invalid. But this is quite another thing from enjoining the people from peaceably assembling and casting their votes for or against any proposition submitted to them under the color of the law."

In the case of Duggan v. City of Emporia, 114 Pac. 235, the Supreme Court of Kansas said in the syllabus:

"It is a principle of general application that courts will not enjoin the calling and holding of an election. * * * Injunction, being an extraordinary remedy, will not be granted unless it be made to appear to the satisfaction of a court of equity that some substantial and positive injury will occur; acts which, though irregular and unauthorized, can have no injurious result, constitute no ground for relief."

In the body of the opinion in said cause, the said court uses this language:

"One of the grounds urged for the injunction is that the ordinances are unconstitutional because of some defect in their title; but this gives a court of equity no jurisdiction to enjoin the passage of an ordinance. No one would claim that the Legislature could be enjoined from the enactment of an unconstitutional law, or that the electors could be enjoined from attempting in an unwarranted manner to amend the Constitution. It is a familiar principle that injunction will not lie to prevent legislative action by a municipal corporation. * * * "

"That this is an attempt to enjoin legislative action is apparent. The initiative and referendum statute provides that upon the presentation of a petition in proper form, duly certified by the city clerk, the mayor and council or mayor and commissioners shall do one of two things: pass the proposed ordinance within 10 days thereafter, or call an election and submit the ordinance to the people, and upon its adoption by a majority of the electors it becomes a valid ordinance.

"This is legislation, either direct by the city or indirect by the people. The suit, therefore, is one to enjoin legislation. In fact, the record shows that the temporary restraining order granted at the time the action was commenced restrained the city in express terms from either enacting the ordinance or calling the election. The appellant fails to make a showing of any fact which would bring his case within the exceptions to the general rule that courts will not enjoin legislative action.

"The futility of the proceedings to enjoin the submission of the proposed ordinances is likewise obvious when we reflect that the people may not adopt them, and the court ought not to be called upon to anticipate conditions which may never arise. The court will not decide at the mere suggestion of a taxpayer whether the city has the right to sell or lease its electric light plant, because there is no certainty that any attempt to lease or sell it will be made. The validity of such a transaction is at this time a moot question, with which courts will have nothing to do. Courts will not express an opinion upon an abstract question which does not arise on existing facts or rights, or where it is sought merely to obtain the opinion of the court upon a question of law. Knight v. Hirbour, 64 Kan. 563, 67 Pac. 1104; Crouse v. Nixon, 65 Kan. 563, 70 Pac. 885; The Queen v. Directors of the Blackwell Railway, 9 Dowl. 558; 27 Cyc. 911.

"It follows from what has been said that the order refusing the temporary injunction must be affirmed."

In the case of the City Council of the City of McAlester v. Milwee et al., 31 Okla. 620, 122 Pac. 173, this court held, in the opinion by Justice Kane, that a court of equity has no jurisdiction to restrain the holding of an election where rights purely political are involved. In the body of the opinion, the learned Justice recites, in substance, that the plaintiffs allege they are voters and taxpayers in the city of McAlester; that they own property in said city; that they are liable for their proportionate share of public expense incurred by said city, and that sections of the charter of the city which provide for the recall of city officers are unconstitutional and void, for reasons set out therein, and that on account of the said sections being unconstitutional and void, the election called for the purpose of voting on the recall of the mayor would be without legal effect, and a great expense to the taxpayers. The trial court enjoined the proposed election, and, commenting thereon, this court said:

"Counsel for the respective parties seem to have refrained from presenting to this court the question whether the parties plaintiff below as taxpayers had such an interest in the subject-matter of the suit as to entitle them to prosecute the same, and whether a suit in equity will lie to enjoin the calling of an election. They say that, whilst the first of these contentions may be made upon authority, they are so anxious to have this court pass upon the case upon its merits that they do not wish to urge that question in this court. The court does not take that view of the matter; we think it is time enough to pass upon such important questions when they are reached in due course, with proper parties, in a proper proceeding. Many applications have been made to this court to interfere with the holding of elections of one kind or another by the exercise of some of the high prerogative writs over which original jurisdiction has been vested

in this court by the Constitution, all of which have been consistently refused. As the question is jurisdictional, we cannot overlook the uniform practice merely because counsel do not wish to make that point. Courts of equity are only conversant with matters of property and the maintenance of civil rights, and will not interfere to enforce or protect purely political rights. This doctrine has been universally applied in other jurisdictions where equity has been invoked to interfere in matters preceding an election. In Fletcher v. Tuttle, 151 Ill. 41, 37 N. E. 685, 25 L. R. A. 143, 42 Am. St. Rep. 220, the Supreme Court of that state, after a review of the authorities, reaffirmed the doctrine previously adopted that chancery has no jurisdiction to protect purely political rights, such as those in respect to public elections, and held specifically that an injunction could not be granted to prevent the giving of election notices or the certifying of nominees for districts created by an apportionment act claimed to be unconstitutional, because such rights were purely political and enforceable only at law. It had been previously held in that state that a court of equity has no jurisdiction to restrain the holding of an election, since the right involved is a political one. People ex rel. Fitnam v. Galesburg, 48 Ill. 485; Walton et al. v. Develing et al., 61 Ill. 201; Darst et al. v. People, 62 Ill. 306; Harris et al. v. Shryock et al., 82 Ill. 119. This question is fully annotated in a note to Shoemaker v. City of Des Moines et al., 129 Iowa, 244, 105 N. W. 520, 3 L. R. A. (N. S.) 382. These cases seem to sustain the conclusion here reached."

In the case of Davis, Superintendent of Public Instruction, v. Whitehead, 86 Okla. 274, 208 Pac. 216, this court said;

"Upon an investigation of the authorities we find the better rule is that an injunction will not issue restraining the holding of an election. It is beyond the power and authority of the courts to dictate to the officers of the people that they should not hold an election; and this rule is almost uniformly adhered to where the complaining party has an adequate remedy at law. If the courts would assume jurisdiction to restrain the officers of the people from calling and holding elections through fear that some imaginary wrong may be done to the complainant objecting to the holding of the election, then the people and their officers would be entirely subservient to the courts and the rights of the people to express their sentiments upon matters of governmental policy, and the administration of their public affairs through assembly and elections would be at the mercy of the courts. The law does not favor such a course of procedure. City Council of Mc-Alester v. Milwee, 31 Okla. 620. 122 Pac. 173, 40 L. R. A. (N. S.) 576; Fletcher v. Tuttle, 151 Ill. 41, 37 N. E. 683, 25 L. R. A.

143, 42 Am. St. Rep. 220; Shoemaker v. City of Des Moines et al., 129 Iowa, 244, 105 N. W. 520, 3 L. R. A. (N. S.) 382."

. By reason of section 1, article 5, and section 1, article 24, Williams' Annotated Constitution, the legislative power of this state is vested in the Legislature of the state, and in the people of the state. By reason of section 1 of article 24, the people have vested the Legislature with the function or power to submit amendments to the Constitution, such amendments to be ratified or rejected by people at an election to be held throughout the state. The question for determination at the polls, when all such amendments are proposed, is a matter purely political, and although it involves an expenditure of public funds for the holding of such an election, courts of equity will not assume jurisdiction by reason of facts such as the allegations contended in the plaintiff's bill filed in this cause.

We conclude, therefore, that the learned trial court, in assuming jurisdiction in granting the injunction from which this appeal is perfected, committed reversible error, and this cause is reversed, with direction to the lower court to dismiss plaintiff's petition.

HARRISON, KENNAMER, COCHRAN, NICHOLSON, and MASON, JJ., concur.