**McALISTER et al. v. STATE ex rel. WALTON et al.**

No. 14852—Opinion Filed Dec. 4, 1923.

(Syllabus.)

1. Constitutional Law — Submission of Amendments — Interference by Injunction.

Section 1, art. 5, and section 1, art. 24, Williams' Annotated Constitution of Oklahoma, vest the legislative power of the state in the Legislature and the people. Section 1, art. 24, of said Constitution gives the Legislature power, by proper resolutions, to submit amendments to the Constitution, and when the Legislature authorizes the submission of proposed amendments to the people, or a proper petition is initiated to amend the Constitution in accordance with the law governing the initiative and referendum, they merely place in motion the process of the people's exercising their reserved legislative power, and whatever is necessary to be done incident to the expression by the people of their will for or against the proposed amendments is done in the exercise of legislative power, and the courts have no jurisdiction to interfere therewith by injunction.

2. Same — Injunction Against State Board Canvassing Returns of Election — Reversal.

In the instant case certain proposed amendments to the Constitution of the state of Oklahoma were, by resolutions passed by the Legislature, authorized to be submitted to the people at an election to be held throughout the state on a date to be fixed by the Governor. In pursuance of the authority or apparent authority given in said resolution, on the 13th day of August, 1923, the Governor issued his proclamation calling an election to be held on October 2, 1923, on said proposed amendments; the same to be conducted in all respects by the State Election Board of the state as provided by general law. The said election was held on the last mentioned date, the 2nd day of October following. The instant suit was instituted in the name of the state and others to enjoin the individual members of the State Election Board and the State Election Board from counting, canvassing, and certifying the results of the vote on such amendments, and also on the proposed amendment to the Constitution known as Initiative Petition No. 79, State Question 119, and a temporary injunction was granted by the trial court, from which this appeal was perfected. Held, that the counting, canvassing, and certifying the results of the votes on the various legislative matters so submitted, constituted a part of the election, and that a court of equity has no jurisdiction to enjoin the performance by the State Election Board of its duty and authority relative thereto, and that the injunction restraining the officers of the State Election Board, and the State Election Board, from canvassing and certifying the returns as provided by law, was improper, and that the judgment of the trial court is reversed, with direction to dismiss the petitions.

Error from District Court, Oklahoma County; T. G. Chambers, Judge.

Injunction by the State, on the relation of J. C. Walton, Governor, and J. C. Walton, Governor, and J. C. Walton, against W. C. McAlister and others, members of the State Election Board, and the State Election Board. Judgment for plaintiffs, and defendants bring error. Reversed, with directions.

Burford, Miley, Hoffman & Burford, Ames, Lowe & Richardson, Embry, Johnson & Tolbert, George F Short, Atty. Gen., and Edwin Dabney, and John Barry, Asst. Attys. Gen., for plaintiffs in error.

George S. Ramsey, H. G. McKeever, Warren K. Snyder, F. E. Riddle, Claude Nowlin, and D. S. Levy, for defendants in error.

Florence E. Cobb, for intervener.

BRANSON, J. This action was instituted in the district court of Oklahoma county by the defendants in error against the plaintiffs in error, on the 3rd day of October, 1923, for the purpose of securing an injunc-

tion against plaintiffs in error individually and as the State Election Board of the state of Oklahoma, from canvassing and certifying the result of the vote cast at the election held throughout the state of Oklahoma on the 2nd day of October, 1923, at which certain constitutional amendments were submitted to the people for their approval or rejection. Among them was a certain initiated constitutional provision known as Initiative Petition No. 79, State Question No. 119.

The allegations of the plaintiffs in the court below, defendants in error here, against the plaintiffs in error, who were defendants in the court below, were very lengthy, and in substance set out the history of the proposed amendments to the Constitution of the state of Oklahoma. A brief review would not be amiss that a clear understanding may be had of the object, purpose, and effect of the relief sought by the plaintiffs' petition in the instant case.

A regular constitutional biennial session of the Legislature of the state of Oklahoma convened at the Capitol of the state in the month of January, 1923, and, being so convened, had all the constitutional power given the legislative branch of the state government by the Constitution of the state. Among the powers granted by the Constitution to the legislative branch of the state government so assembled, is the authority, under section 1, art. 24, and section 1, art. 5, Williams' Annotated Constitution, to submit proposed amendments to the Constitution itself. Said section 1, art. 24, provides:

"Any amendment or amendments to this Constitution may be proposed in either branch of the Legislature, and if same shall be agreed to by a majority of all members elected to each of the two houses, such proposed amendment or amendments shall, with the yeas and nays thereon, be entered in the journals and referred by the Secretary of State to the people for their approval or rejection at the next general election, except when the Legislature by a two-thirds vote of each house shall order a special election for that purpose. If a majority of the electors voting at such election shall vote in support of any amendment thereto, it shall thereby become a part of this Constitution. If two or more amendments are proposed, they shall be submitted in such manner that the electors may vote for or against them separately."

Section 1, art. 5, vests the legislative power of the state in the Legislature, but reserves the right in the people of the state to defeat, by referendum, acts of the Legislature, and to further legislate by initiative, as well as the right to adopt constitutional amendments proposed by the legislative branch or initiated by the people themselves. The exercise of these rights so reserved in the people of the state is legislative; the sovereign voters of the state, by solemn constitutional provisions, have the right to exercise such legislative power in the manner which the Constitution and laws of the state have prescribed. The said Legislature proposed by resolution five certain constitutional amendments, known and referred to as joint resolutions:

The first: Providing for compulsory compensation of employes in case of death (chap. 249, Session Acts 1923).

The second: Amendment to section 3, art. 6, of the Constitution, familiarly known as a provision extending the qualifications of persons eligible to elective or appointive officers of the state to women.

The third: The soldier bonus amendment.

The fourth: An amendment providing for a special state levy for public schools.

The fifth: Amendment providing for the payment of depositors in defunct state banks.

The said resolutions were adopted by the Legislature in such manner as authorized the calling of a special election for the submission thereof to the vote of the people. The authority was delegated to the Governor of the state to call such special election, not less than 30 days nor more than twelve months after the adjournment of the legislative session. In the exercise of the authority so delegated to him, the Honorable J. C. Walton, Governor of the state of Oklahoma, did exercise his authority so vested by said resolution, and on the 13th day of August, 1923, issued his proclamation calling an election to be held by the regularly constituted election officials throughout the state of Oklahoma, in order that the people might cast their votes either for or against the said proposed amendments to the organic law of the state, which said proclamation of the Governor, after reciting, by way of whereas clauses, the passage of said resolutions so abstracted as bove, recites:

"Now, Therefore, in order to carry out the intent and purpose of the Legislature in the manner of submitting said proposed amendments to the Constitution above set out, I, J. C. Walton, Governor of the state of Oklahoma, by virtue of the authority in me vested, do hereby proclaim and call a special election to be held under the direction of the State Election Board of the state of Oklahoma, in each and every voting precinct in said state, wherein and whereat by proper ballot title, each of the above propositions and questions shall be submitted to the qualified electors of the state of Oklahoma for their approval or rejection, said election to be held on Tuesday, the second day of October, in the Year of Our Lord

one thousand, nine hundred and twenty-three.

"(Signed) J. C. Walton,
"Governor of the State of Oklahoma."

In pursuance of said resolutions so passed by the Legislature in its said regular biennial session, and in pursuance of the said proclamation of the Governor, acting under the authority of the said resolutions, the State Election Board caused to be held throughout the state of Oklahoma said election, so called, on the 2nd day of October, 1923. After the issuance of said proclamation and at the direction of the Governor of the state, as disclosed in the opinion of this court in the case of McAlister et al. v. State, 95 Okla. 200, 219 Pac. 134, suit was instituted in the name of the state in the district court of Oklahoma county to enjoin said election board from holding said election, and an injunction was granted by the district court, Hon. T. G. Chambers presiding, on the 18th day of September, 1923, from which order of injunction representatives of those interested in the soldier bonus and the so-called women's amendment to the Constitution, perfected an appeal to this court, which was by their respective representative attorneys presented to this court, and briefs filed therein on the 26th day of September, 1923, praying a reversal of said injunction, that said amendments might be voted on as provided in the said proclamation of the Governor.

In said cause this court reversed the judgment of the trial court, and in brief said that when the Legislature authorizes submission of a proposed amendment to the Constitution to the people, it places in motion the process of the people's exercising their reserved legislative power, and a court of equity will not assume, in advance, jurisdiction to determine whether the proposed amendments, if adopted, are submitted and adopted in accordance with the provisions of the Constitution and law of the state governing the same.

The instant suit was instituted the day following the holding of said election, both in the name of the state on the relation of the Governor, J. C. Walton, in the name of J. C. Walton as Governor, and the name of J. C. Walton individually. Without undertaking to set out in substance or in detail the long allegations of the petition, we deem it sufficient to state that epitomized, they all plead that the said proposed constitutional amendments and the said proposed amendment initiated and known as Initiative Petition No. 79, State Question No. 119, were neither authorized to be submitted by the Legislature as provided by the Constitution, nor was the election called or held in accordance with the provisions of the Constitution and laws of the state, and that said Initiative Petition No. 79, State Question No. 119, which sought to amend the Constitution of the state, granting the legislative branch thereof authority to convene on the petition of a majority of the members constituting both houses for inquisitorial purposes, was neither initiated nor submitted in accordance with the requirements of the Constitution and laws of the state. The said petition is therefore praying that an injunction be granted against the defendants and against the State Election Board enjoining them and it from certifying or attempting to certify, from canvassing or attempting to canvass, and from making a public declaration or return to the Governor of the result of said election. A temporary restraining order was first granted by the trial court, and later a temporary injunction, and from the last order, the defendants have perfected this appeal, and in their petition in error say that the trial court committed reversible error in assuming jurisdiction; that the court committed reversible error in granting the temporary injunction; that the court erred in overruling demurrer of the plaintiffs in error to the petition for injunction; and that the court erred in holding that it had jurisdiction to hear, try, and determine the issues presented by the petition as amended.

After the filing of the original petition herein, two petitions in intervention were filed, seeking the same injunctive relief as prayed in the original petition; one enjoining the canvass of the vote on the so-called woman's amendment, and one seeking an injunction against the canvass and certification of the results on the workmen's compensation amendment. The intervening petitions present no questions different from those presented by the original petition as amended, and the questions raised by them necessarily follow the disposition of the questions raised by the original petition filed in the name of the state as above set out.

We do not deem it necessary to pass upon whether or not the allegations contained in the petition, if true, in proper proceedings with proper parties, where such allegations of alleged fact could be litigated and where real and substantial interests of the litigants were at issue, would justify a judgment that the election was without legal force or effect, but we think that the only question necessary or that can be determined here is whether or not in a proceeding of this character the trial court had jurisdiction to grant injunctive relief which the petition sought. The Attorney General

and his counsel representing the plaintiffs in error take the position that the court had no jurisdiction to enter the order of injunction from which this appeal is taken, and in support thereof cite numerous authorities. They say that the plaintiff is not a party in interest, in that as a taxpayer he is not entitled to the relief sought, citing McAlister et al. v. State, supra, and McAlister v. Milwee, 37 Okla. 620, 122 Pac. 173: nor that, as Governor, has he either civil or property interest in his office or its retention which would warrant the granting of the relief prayed (Taylor v. Peckham, 178 U. S. 548, 44 L. Ed. 1187; Powers v. Ratcliff, 112 Miss. 60, 72 South. 856); and that the issues contended for by the state, on the relation of J. C. Walton as Governor, are not justifiable issues, in a cause such as here, since they pertain to legislative action and the exercise of political power not within the control of the judiciary, and since the defendants, as members of, and constituting the State Election Board, have no interest in the issues raised, but are acting solely as officers of the plaintiff state, and that the defendants have no adversary interests which are determinable in this action (Muskrat v. U. S., 219 U. S. 346, 55 L. Ed. 246); and further contend that the instant case has for its purpose enjoining the duly constituted officers of the law performing their proper functions as to legislative enactments prior to any issue being raised by any party whose interests are adversely or wrongfully affected by the alleged enactment or failure to enact the legislative provisions so voted on by the people of the state. The defendants further contend that equity has no jurisdiction to enjoin the exercise of legislative and political rights. While we think that the questions here presented for determination have in reality been passed upon and fully determined in the above cited case of McAlister v. State, decided September 27, 1923, in which this court held that equity would not enjoin the exercise of purely political rights, we will further consider the question raised as against the canvass of the returns.

Referring again to the constitutional provisions as to the right of the people of the state, in the exercise of their reserved legislative power, to amend the Constitution of the state and to adopt or reject such amendments as are submitted by the legislative branch of the state government and matters initiated in compliance with the initiative provisions of the Constitution. it is clear that all of the matters submitted at the election in question were for the determination of the sovereign voters of the state as to what should or should not constitute a part

of the organic law of Oklahoma. In exercising these rights so reserved to the people, mandatory provisions of the Constitution and laws, intended to safeguard the same, must be substantially complied with, but whether or not that is true cannot be determined until the final determination by the duly constituted officers of the action of the voters at the election held under apparent legal authority. Equity has no jurisdiction to enjoin the exercise of legislative authority when being carried out either by the Legislature of the state or by the people of the state. The counting, canvassing, and certifying, by the State Election Board, of the returns from the different voting precincts and counties of the result of the election held, are as much a part of the exercise of the legislative function by the people as the act of casting the ballot. There is no way known to law in this state to determine whether or not an amendment to the Constitution or initiative provision has been adopted or rejected except by the final canvass as provided by the statute, and certification thereof to the proper officers. In all legislative bodies, a proposed bill is voted on and the result of the roll call is made known, certified, and made a matter of record. Certainly equity would have no jurisdiction after the roll was called in either branch of the state Legislature to then enjoin the officers from announcing the result of the roll call and properly making same a matter of record, for the alleged reason that the act on which the vote is cast is alleged to be in violation of the Constitution of the state, not properly taken, or would injuriously affect the state or the Governor of the state in his official capacity or in his individual capacity. The queston as to whether or not a legislative enactment is in violation of the Constitution of the state, or not properly adopted by the Legislature, is a question in which courts will not participate until the rights of some individual are alleged to be invaded by the alleged illegal enactment, and then the courts inquire into the questions raised. So in matters legislative in their nature, presented to the people of the state, the courts of equity will not inquire into whether or not the matters adopted or rejected were so in accordance with the basic law of the state and the statutes made in pursuance thereof until action is brought by proper parties and in a proper proceeding. The effect of the action of the trial court in granting this injunction is to catch by the over-extended arm of equity, the alleged legislative provisions in the air and suspend them there and prevent the only recognized legal way of the results of the ballot being made a matter of public record. If the allegations of the plaintiffs' petition

be true, in a proper action with proper parties, they can be determined. Until that arises, the courts have no power to interfere by injunction or otherwise with the completion of their attempted exercise of the legislative power given to the people by the Constitution of the state. Davis v. Whitehead, 86 Okla. 273, 208 Pac. 216. In the case of City of Dallas v. St. R. R. Co., 105 Tex. 343, 148 S. W. 292, the court said:

"The case is not one where the enforcement of an enacted and effective city ordinance is attempted to be enjoined because of its invalidity and prejudicial effect upon property rights. It is one where, upon such grounds, it is sought, in effect, to prevent by judicial remedy the enactment itself of an ordinance by enjoining the act which will put it in force. It is therefore necessary to the decision that there be clearly ascertained, determined, and respected that boundary line that separates political power and judicial authority and defines their respective limits. Elections belong to the political branch of the government, and the general rule is that they are beyond the control of the judicial power. The authority resides in the courts to determine their validity, and in cases of invalidity to protect property rights which may be wrongfully impaired, if their result is suffered to become effective and is sought to be enforced; but a proper deference for their respective powers that is imposed upon the several departments of the government should constrain the courts to caution and certainty when their authority is invoked against the determination of the popular will. It should always be remembered that the separation of the great powers of government into different and distinctive departments, each independent in its own sphere and protected by constitutional limitations that neither can transcend but which all must respect, is the distinctive feature of our system, and its accomplishment is the fundamental fact of our history. The preservation of these powers in their full integrity and independence is a matter of common concern, for upon the freedom of their exercise depend alike public repose and private security, and neither will long endure if their abridgment be permitted or encouraged. While the courts will not and should not hesitate to discharge their responsible functions in all cases that fall within the judicial authority, to them peculiarly is committed the duty of emphasizing the obligation that rests upon each department of the government to observe its rightful limits, and for this reason it is the more incumbent upon them not to exceed their own.

"As elections are essentially the exercise of political power, it cannot be doubted that all action properly related thereto and necessary to their completion is from the same source, and is but the expression of the same power. The canvassing of the returns of an election is necessary to the determination of the results. It is an integral part of the election itself, without which the election is a vain proceeding; and as such inheres as a right sanctioned by the political power, as absolute as the right of the electorate to vote or for the election to be held. When it is declared that because of their relation to the political power of the government, elections are beyond the control of the judicial power, it is meant that the whole election, including every step and proceeding necessary to its completion, is exempt from judicial interference, and the canvassing of the returns of an election must therefore be held as within the rule and justly entitled to its protection. * * *

"The law does not assume that sworn officials will attempt the enforcement of an invalid law. Its presumption is to the contrary, and it therefore awaits such attempted or threatened enforcement before it moves at the instance of parties in interest. If this ordinance is a nullity, as is here contended by the defendant in error, the canvassing of the returns of this election will not quicken it with life and virtue. At all events, it is not a binding enactment until its enactment is completed, and, until it is a binding enactment, it retains its relationship to the political power, and is immune from the process of judicial authority."

Richardson v. Mayes (Tex. Cv. App.) 223 S. W. 546; Powers v. Cade (Miss.) 72 South. 864; People ex rel. O'Reilly v. Mills (Colo.) 70 Pac. 322; State v. Thorson (S. D.) 33 L. R. A. 582; Fletcher v. Tuttle, 151 Ill. 41, 25 L. R. A. 143; State v. Hall (N. D.) 186 N. W. 284.

In Pomerey's Equity Jurisprudence (4th Ed.) sec. 1753, it is said:

"An injunction will not issue, as a general rule, for the purpose of restraining the holding of an election, or of directing or controlling the mode in which, or of determining the rules of law in pursuance of which an election shall be held. An election is a political matter, with which courts of equity have nothing to do. Moreover, the effect of interference in such matters might often result in the destruction of the government."

In 9 R C. L., page 1153, art. 143, it is said:

"And the rule preventing a court of equity from intervening |in election matters requires a refusal of its aid by injunction to restrain officers on whom devolves the duty of declaring the result of an election from performing their duty."

Joyce on Injunctions, vol. 2, page 2037:

"A court of equity will not grant an injunction restraining the proper board from proceeding to canvass and from certifying

and announcing the result of an election, * * * as such duty is a political one, with the performance of which a court of equity will not interfere."

The judgment of the trial court is reversed, with directions to set aside the injunction and sustain the demurrer and dismiss the petitions.

JOHNSON, C. J., and KENNAMER, NICHOLSON, COCHRAN, and HARRISON, JJ., concur.